431 P.2d 302

Sandra LAWRENCE, Johnny Easter and Linda Sue Easter, by their friend Geraldine Lawrence, Appellants,

v.

Thomas Harold BURKE and Shirley Ann Burke, his wife, and State Farm Mutual Automobile Insurance Company, Appellees.

No. 1 CA–CIV 242.

Court of Appeals of Arizona.

Sept. 1, 1967.

Rehearing Denied Sept. 29, 1967.
Review Denied Nov. 14, 1967.

Langerman, Begam & Lewis, by Samuel
Langerman, Mark I. Harrison, Phoenix,
for appellants.

Lewis, Roca, Beauchamp & Linton, by
John P. Frank, James Moeller, D. W.
Grainger, Phoenix, for appellees.

STEVENS, Judge.

The matters in connection with this appeal arise out of an automobile accident which occurred on Sunday, 17 January 1960. The appellants were the plaintiffs in the trial court. The Burkes filed an answer in the Superior Court through the services of an attorney who was selected by the insurance company. Later the attorney withdrew. The defaults of the defendants were entered for failure to file answers to interrogatories and a formal written default judgment was entered. The insurance company intervened in the case and the default judgment as well as the supporting defaults were set aside. This appeal questions the propriety of permitting the insurance company to intervene and the propriety of the order vacating the default judgment and the defaults.

## INTERESTED PARTIES

Geraldine Lawrence lives in the vicinity of Litchfield Park west of the City of Phoenix. She is the mother of the plaintiff Sandra Lawrence and the grandmother of the plaintiffs Linda Sue Easter and Johnny Easter who are sister and brother. At the time of the accident the above named minor plaintiffs were of the following approximate ages: Sandra, 17; Linda Sue, 8; and Johnny, 7. All three lived in the Lawrence household. Linda Sue and Johnny are the children of a daughter of Mrs. Lawrence and they lived with their grandmother substantially all of their lives. The record suggests, but is not clear, whether the grandmother had either adopted her two grandchildren or was possibly their legal guardian.

Mrs. Lawrence operated a grocery store. Next to the grocery store was a service station operated by the Van Winkles. Mrs. Van Winkle is a daughter of Mrs. Lawrence and their residence is in close proximity of the Lawrence home. The Van Winkles are not parties to the litigation and are mentioned because of the family relationship.

At one time Mrs. Lawrence received foster children into her home and Thomas Harold Burke resided with her for some time in this relationship. After his service during the Korean Conflict, he married Mrs. Lawrence's daughter Shirley Ann. For a time Mr. and Mrs. Burke rented living quarters from Mrs. Lawrence. They then entered into the purchase of a home in the City of Tempe which lies east of Phoenix and there resided for a time. At the time of the accident the Burkes had two children and Mrs. Burke was pregnant. From time to time Burke had worked in Mrs. Lawrence's store and was interested in establishing a garage for the repair of automobiles in the vicinity of the store and service station.

The State Farm Mutual Automobile Insurance Company issued its policy of insurance wherein Burke was the named insured and this policy was in effect on the date of the accident.

Louise C. Powell is the trustee in bankruptcy in relation to Burke's voluntary petition in bankruptcy.

## THE INSURANCE POLICY

At the time of the accident Burke was insured by a policy issued by State Farm. Coverage A related to bodily injury liability and coverage B related to property damage liability. The policy provided that State Farm,

"* * * agrees with the insured named herein subject to the provisions of the policy: * * *

"(2) As respects the insurance afforded under coverages A and B *and in addition to* the applicable limits of liability:

"(a) *to defend any suit* against the insured *alleging* such bodily injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *." (Emphasis supplied.)

The policy contained exclusions reading, in part, as follows:

"(g) coverage A, to bodily injury to the insured or any member of the

family of the insured residing in the same household as the insured * *."

The maximum liability specified in the policy was $10,000.00 for any one person and $20,000.00 for any one accident.

## THE ACCIDENT

Mrs. Burke was not feeling well, and the night before the accident Mr. and Mrs. Burke and their two children stayed with their relatives. It is not clear whether the Burke family were all in the Lawrence home or part in the Lawrence home and part in the Van Winkle home. Shortly before noon on the day of the accident Burke, together with Sandra, Linda Sue and Johnny, left the Lawrence residence in the Burke automobile, intending to go to the Lawrence store. The car overturned and the minors sustained injuries of varying degrees. It is not clear whether the accident was entirely a one car accident or whether the car was forced off the road by another vehicle. Statements by Burke and Sandra indicated that Burke was driving in a careful manner and that a second vehicle was driven in such a manner as to cause the accident.

## THE PERSONAL INJURY ACTION

Through attorneys not now of record in this cause and on 21 April 1960, the three minors, through Mrs. Lawrence as their next friend, sued Mr. and Mrs. Burke and a Mr. and Mrs. Johnson. The allegations of the complaint are a routine, concise statement giving no indication of the relationship between the plaintiffs and the Burkes. Prior to the filing of the suit and on 25 January 1960, a State Farm representative secured a statement from Burke. This statement is not conclusive as to the exact residence of the Burkes, that is, whether they were then residing at their property in Tempe and merely visiting Mrs. Lawrence, or were then residing at the Lawrence home. In a sworn statement taken from Burke by a State Farm representative on 16 August 1960, the indications were stronger that the Burke family

lived with Mrs. Lawrence at the time of and just prior to the accident.

On 30 August 1960, through an attorney selected by State Farm who is not an attorney of record at this time, the Burkes filed their answer to the complaint. An answer was filed by the Johnsons. Depositions were taken. The Johnsons prevailed on their motion for summary judgment.

On 11 May 1961, Mrs. Lawrence made a statement to a State Farm representative. On 25 August 1961, pursuant to a motion filed and served, the Superior Court entered its order authorizing the withdrawal of the attorney selected by State Farm, leaving the Burkes without an attorney of record. The motion was based upon the assertion that the minor plaintiffs and Burke were all residing in the same household and that the above quoted policy exclusion relieved State Farm from any further duty in the litigation.

In December 1961 the attorneys of record for the plaintiffs were granted leave to withdraw and thereafter the present attorneys undertook their representation. We do not recite the several efforts to secure a default judgment against the Burkes. On 24 January 1963, pursuant to Rule 33 of the Rules of Civil Procedure, 16 A.R.S., interrogatories were mailed to Mr. Burke only. Answers thereto were not filed within the time specified in the rule. Based upon the absence of answers to the interrogatories a motion was filed on 29 August 1963, seeking to strike the answers of both Mr. and Mrs. Burke. This motion was granted. On 10 January 1964, upon request of the plaintiffs the default of both Mr. and Mrs. Burke was entered.

Rule 55(b) (1) provides, in part:

" * * * If the party against whom judgment by default is sought *has appeared* in the action, he or, if appearing by representative, his representative, shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." (Emphasis supplied )

In an apparent effort to comply with this rule a "Notice of Application for Default Judgment" was filed, the body thereof reciting,

"TO: THOMAS HAROLD BURKE and JANE DOE BURKE, his wife:

"Please take notice that the undersigned will make application to this Court in the Court Commissioner's office on the 14th day of January, 1964, at 10:00 o'clock, A.M., or as soon thereafter as counsel may be heard, for entry of a Default Judgment in favor of plaintiffs and against defendants THOMAS HAROLD BURKE and JANE DOE BURKE for such damages as are prayed for in the Complaint filed herein."

This motion was served on Mr. Burke only, service being by mail. At that time in Maricopa County there were 17 Superior Court Judges and 2 Court Commissioners. (See pages vii and viii of 95 Ariz.) Burke attempted to attend the hearing. The plaintiffs did not appear in person or by their attorney and Burke was not informed as to a new hearing date. On 5 February 1964, Mrs. Lawrence and Sandra appeared before a court commissioner with their attorney; they were sworn and testified, and formal written judgment was entered against "Thomas Harold Burke and Jane Doe Burke" in the aggregate sum of $300,000.00, being $100,000.00 for "each of the said above mentioned plaintiffs". The address of Burke does not appear on the minutes, so the Clerk of the Superior Court could not comply with the mandate of Rule 77(g) requiring that,

"Notice of orders or judgments. Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 *upon every party affected thereby who is not in default for failure to appear,* and shall make a note in the docket of the mailing. * *"
(Emphasis supplied.)

It was some time thereafter that Burke learned of the entry of the judgment.

Burke was experiencing financial troubles induced in part at least, by the adverse effect of the judgment upon his credit rating and he sought advice of counsel through the assistance of Legal Aid. He thereafter filed a voluntary petition in bankruptcy and Louise C. Powell was appointed as the trustee. She employed plaintiffs' counsel as her attorneys.

On 17 December 1964, the same named plaintiffs filed a suit in the United States District Court for the District of Arizona against State Farm and service of process followed. The suit seeks to collect the $300,000.00 judgment. The service of process was the first actual knowledge which State Farm had with reference to the entry of judgment, although it would not have been difficult for State Farm to have ascertained the progress of the litigation. In the Federal Court case, Burke's deposition was taken by State Farm. Burke was not represented by counsel. He followed the advice of plaintiffs' counsel in relation to questions which plaintiffs' counsel deemed to be immaterial to the issues and each time, upon suggestion being made, Burke declined to answer. At the opening of the deposition, plaintiffs' counsel advised that an amended complaint would be filed joining the trustee in bankruptcy as a party-plaintiff.

State Farm, through its present attorneys, filed a motion for leave to intervene in the Superior Court action, urging that the Burke deposition disclosed a change of position as to his residence on the day of the accident and that there might now be liability on the part of State Farm which State Farm deemed to be absent at the time of the withdrawal of its attorneys in August 1961. The same attorneys filed pleadings on behalf of the Burkes. In the State Court, in addition to the request for leave to intervene, a request to vacate the default judgment and the default were presented.

An affidavit over the signature of Burke was filed, stating that he did not authorize State Farm's attorneys to appear for him. An affidavit of the trustee in bankruptcy

was filed, asserting that there was no right on the part of State Farm's attorneys to represent the trustee or Burke. The trustee urged that it was her duty to preserve the assets of the bankrupt estate and that the action by State Farm's attorneys was in derogation of her obligations as trustee.

State Farm was granted leave to intervene and its attorneys were permitted to represent the Burkes. The default judgment and the defaults were set aside. The plaintiffs appealed, filing a timely notice of appeal and an appeal bond. The notice of appeal is addressed as follows:

"*NOTICE OF APPEAL*

"TO: DEFENDANTS THOMAS H. BURKE and SHIRLEY ANN BURKE, his wife; Intervenor STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and its attorneys,

LEWIS ROCA SCOVILLE BEAUCHAMP & LINTON:"

Proof of service thereof is as follows:

"Copy of the foregoing Notice of Appeal mailed this *16th* day of August, 1965, to:
D. W. Grainger, Esquire
LEWIS ROCA SCOVILLE
BEAUCHAMP & LINTON
114 West Adams Street
Phoenix, Arizona 85003
Attorneys for STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY
/s/ Mark I. Harrison
Mark I. Harrison"

On its own motion this Court raised the question as to the effectiveness of the appeal as to the Burkes. The State Farm attorneys filed a single brief on behalf of State Farm and the Burkes. The appellants have filed separate affidavits of Mr. and Mrs. Burke, each stating:

"That your affiant was apprised of the pending appeal * * * by the appellants' attorneys and has had knowledge of said appeal since it was commenced; that, if the Court of Appeals believes

that, even though your affiant had actual notice of said appeal, some additional notice was or is required, then your affiant hereby waives any such notice of the pending appeal and hereby waives any further notice."

### THE APPEAL

■ Mr. and Mrs. Burke cannot cure the failure to serve the notice of appeal by their affidavits. Knowledge of the pendency of an appeal and legal notice thereof are not the same. Should it be that State Farm's attorneys had no authority to represent the Burkes on the appeal, and we hold expressly to the contrary, then the appeal as to the Burkes would have been held to have been abandoned and the action of the trial court would have been thereby sustained. Since we hold that under the circumstances State Farm's attorneys properly represented the Burkes, they have the benefit of the appeal.

### DUTY TO DEFEND

■ It is the position of State Farm that in the event that the injuries sustained by the minor plaintiffs came within the policy exclusion hereinbefore quoted, then State Farm was relieved of its duty to defend. With this position we do not agree. In our opinion, the insurance contract imposed two separate and distinct obligations upon State Farm, these being severable.

The Supreme Court of California had this and other issues under consideration in the case of Comunale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958). In relation to the refusal of the insurance company to defend the court stated (page 200):

"* * * we must take into consideration the fact that Traders not only wrongfully refused to defend the action against Sloan * * *."

To ascertain the full significance of this statement, we turn to the provisions of the policy which are quoted in the opinion of the District Court of Appeal, Second District, an opinion bearing the same caption

and reported in 321 P.2d 768. We make this reference with the full realization that the opinion of the District Court of Appeal was vacated by the Supreme Court of California. The policy provided (page 771):

"As respects such insurance as is afforded by the other terms of this policy

"(a) under coverages A and B the company shall

"1. defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof; even if such suit is groundless, false or fraudulent; * * *"

In our opinion, the language contained in the State Farm policy now under consideration in relation to the duty to defend presents an even stronger statement of the obligation to defend. A frequently cited case to the same effect is City Poultry & Egg Co., Inc. v. Hawkeye Casualty Co., 297 Mich. 509, 298 N.W. 114 (1941). The same principle has been set forth in the case of Paulin v. Fireman's Fund Insurance Company, 1 Ariz.App. 408, 403 P.2d 555 (1965).

It has been held that the duty to defend does not end, even though the insurance company has paid out the full amount of its policy limits. American Employers Ins. Co. v. Goble Aircraft Specialties, Inc., 205 Misc. 1066, 131 N.Y.S.2d 393 (1954).

In addition to this principle of law, cases hold that the insurance company may not go beyond the allegations of the complaint in relation to the determination of its duty to defend. Sims v. Illinois National Casualty Co., 43 Ill.App.2d 184, 193 N.E.2d 123. (1963), and Paulin.

 We hold that when State Farm's first attorney was granted leave to withdraw on 25 August 1961, State Farm breached its contract with the Burkes.

### INSURER'S SAFEGUARDS

 In our opinion, the language set forth in Exclusion (g) is ambiguous. In the case of State Farm Mutual Automobile Insurance Company v. Thompson, decided in 1967 by the United States Court of Appeals, 9th Circuit and reported in 372 F.2d 256, the identical policy language was under consideration. We recognize that the factual problem presented to the court was quite different from the one before us. We agree, however, with the statement of the Court (page 258):

"The term 'family', which is not defined in the policy, is at best imprecise and having in view the possible meanings which may be given to it, may fairly be said to be ambiguous."

 State Farm was not without its remedy. It could have defended under a reservation of rights, or it could have filed suit for a declaratory judgment to ascertain whether the exclusion applied to this particular case. Sims.

### BURKE'S DUTY TO MITIGATE DAMAGES

 Even though State Farm breached its contract, it is not wholly without some rights. On the breach of the contract it became Burke's duty to take reasonable steps to mitigate the damages. Rio Grande Oil Co. v. Pankey, 50 Ariz. 529, 73 P.2d 707 (1937); Cain v. Grosshans & Petersen, Inc., 196 Kan. 497, 413 P.2d 98 (1966). He was unable to employ an attorney to represent him, stating that he was without means to do so. He could not on the one hand refuse to employ counsel even though due to financial problems, and on the other hand refuse State Farm's belated aid in setting aside the judgment and in sustaining the trial court's action on appeal. Had Burke employed his own counsel who then sought to protect him, we would be faced with a different picture. The plaintiffs are in no position to raise the issue as to whether State Farm could re-enter the case. This right is one which is personal to the Burkes. Rom v. Gephart, 30 Ill.App. 2d 199, 173 N.E.2d 828 (1961); Rollins v. Bay View Auto Parts Co., 239 Mass. 414, 132 N.E. 177 (1921). The action by State Farm seeking to vacate the judgment does

not have the effect of removing assets from the estate of the bankrupt.

We hold that under the circumstances it was proper for State Farm's attorneys to seek to set aside the judgment against the Burkes and to seek to sustain that action on appeal.

## WAS INTERVENTION PROPER?

■ State Farm has a definite interest in the lawsuit. This is made clear by the case of State Farm Insurance Company v. Roberts, 97 Ariz. 169, 398 P.2d 671 (1965), and by Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967). In Sandoval the Court stated (page 102):

> "Financial's remedy, however, is not to attempt to relitigate the facts of the original suit in the subsequent garnishment action, as this is merely an ancillary proceeding to subject the indebtedness to satisfaction of a judgment. Weir v. Galbraith, 92 Ariz. 279, 376 P.2d 396. If the insurance company can show statutory grounds to set aside the default, its remedy is to move to have the default judgment set aside, as was done in the instant case."

■ The matter of intervention in this case is governed by Rule 24. Rule 24, prior to the amendment thereof effective 31 October 1966, required that an application to intervene must be timely and did not limit the application to a situation before judgment.

We hold that intervention was proper.

## DEFAULT OF MRS. BURKE

■ There was no basis for the entry of Mrs. Burke's default and, therefore, no basis for the entry of judgment against her. Her answer was filed. She was not served with interrogatories and, therefore, did not fail to answer interrogatories. The record does not show a service upon her of a motion to strike her answer and her answer should not have been stricken. On its own motion, the trial court would have been justified in vacating the default judgment and the default as to Mrs. Burke.

These conclusions are sustained by Phoenix Metals Corp. v. Roth, 79 Ariz. 106, 284 P.2d 645 (1955).

We are at a loss to understand why Mrs. Burke has been continuously referred to as "Jane Doe Burke". Her correct name was certainly available to the original attorneys for the plaintiffs. The answer which was filed on behalf of the Burkes set forth her true name. We have corrected the caption of this opinion to show her true name.

## JUDGMENT AGAINST MR. BURKE

There was a legal basis for the motion to strike Mr. Burke's answer for his failure to respond to the interrogatories.

■ We do not approve of the attempted compliance with Rule 55(b) in relation to the giving of the required three day notice. Whereas there were 17 Divisions and 2 Court Commissioners at the time in question, there are now 21 Divisions and 5 Court Commissioners. (See pages ix and x, 101 Ariz.) To be effective, the notice should specify the time and place with particularity. There was no order fixing the time for the hearing noticed for 14 January 1964, consequently there was no requirement for an order of continuance. Burke should have received a copy of an order of continuance mailed pursuant to Rule 77(g) or a new notice for the hearing which was held on 5 February 1964.

■ The failure to comply with Rule 55(b) is not jurisdictional. Nesbitt v. Nesbitt, 1 Ariz.App. 293, 402 P.2d 228 (1965); Bayham v. Maryland National Insurance Company, 3 Ariz.App. 405, 415 P.2d 120 (1966). Even though noncompliance with the rule is not jurisdictional, the failure to comply with the rule may be a circumstance considered by the court in relation to a motion to set aside a default judgment.

■ An improper default judgment against one spouse may be considered by the court in relation to a motion to set aside a default judgment against the other spouse. Dart v. Valley National Bank of Arizona, 5 Ariz.App. 365, 427 P.2d 346 (1967). Rule 60(c) authorizes the court

to "relieve a party * * * from a final judgment * * * for * * * (6) any other reason justifying relief from the operation of the judgment". In relation to setting aside a default judgment, the Arizona Supreme Court in Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 (1963), in reviewing the discretion of the trial judge, stated (Page 329, 385 P.2d page 210):

"* * * In this determination the court is guided by certain equitable principles. One is that the defendant should be allowed to defend the matter on its merits when the circumstances are such that it would be extremely unjust to enforce such a judgment. Coconino Pulp and Paper Co. v. Marvin, 83 Ariz. 117, 317 P.2d 550 (1957)."

The record before us does not disclose that each minor sustained injuries of substantially similar severity. The indications are that Johnny's injuries were not severe.

The injuries sustained by Sandra and Linda Sue appear to be of greater consequence and the record apparently impressed the trial judge, as it impresses us, that the injury sustained by any one minor could not reasonably be evaluated in the sum of $100,000.00. This is not to be considered as a finding in this case should the evidence sustain a verdict in this sum. The record before us reflects a serious question as to Burke's liability, and the extent thereof.

Under all of the circumstances presented in this record, we hold that the record sustains the action of the trial court in vacating the judgment and the defaults upon which it is based.

There remain potential questions which must be answered by the trial court.

Affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.