519 A.2d 219

**HARTFORD INSURANCE COMPANY, et al.**

v.

Victor W. BIRDSONG, et al.

No. 416, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Jan. 8, 1987.

M. Bradley Hallwig (Gregory L. VanGeison and Anderson, Coe & King, on the brief), Baltimore, for appellant, Hartford Ins. Co.

Roger Robertson (A. Douglas Owens, on the brief), Baltimore, for appellant, Liberty Mut. Ins. Co.

James M. Gabler (Phillips P. O'Shaughnessy, Paul W. Spence, Sandbower, Gabler & O'Shaughnessy, P.A., Gerald H. Cooper and Cooper, Beckman & Tuerk, on the brief), Baltimore, for appellees.

Argued before GILBERT, C.J., and KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

This appeal arises from a personal injury action instituted by the appellees, Victor W. Birdsong and his wife, Elaine Birdsong, against multiple defendants, including companies insured by the appellants, the Hartford Insurance Company (Hartford) and Liberty Mutual Insurance Company (Liberty Mutual). After their named insureds were voluntarily dismissed as parties defendant, Hartford and Liberty Mutual separately sought to intervene as of right in the action on grounds that they might be found liable for a judgment obtained against another defendant. Both appellants challenge the trial court's denial of their motions to intervene.

## FACTS

On May 14, 1980, Victor Birdsong was stopped at a toll booth for the Baltimore Harbor Tunnel when his vehicle

was struck in the rear by a truck driven by Jake Spurlin and owned by K.D. Jalousie of New Jersey, Inc. (Jalousie). At the time of the accident, the truck operated by Spurlin was en route from Elizabeth, New Jersey to Baltimore to be fitted with a new body by Duralite Truck Bodies and Container Corporation (Duralite), a division of Warner Fruehauf Trailer Company, Inc. (Warner Fruehauf). Duralite had contracted with T.R. Transport, Inc., to have Jalousie's truck picked up in New Jersey and driven to Baltimore. Spurlin was the T.R. Transport employee assigned to accomplish that task. On the date of the accident, Jalousie was covered by a policy of liability insurance issued by Hartford, while Liberty Mutual similarly insured Duralite and Warner Fruehauf under a single policy.

On April 29, 1983, the Birdsongs filed suit in the Circuit Court for Baltimore City seeking damages for injuries allegedly resulting from the May 14, 1980 accident.[1] Among the defendants named in the suit were Jake Spurlin, Jalousie, Warner Fruehauf, and Duralite.[2] Liberty Mutual provided counsel for Warner Fruehauf and Duralite pursuant to the terms of their liability policy. An answer to the Birdsongs' complaint was filed on behalf of those two defendants on July 12, 1983. Jalousie answered the complaint on September 2, 1983, through counsel provided by its insurer, Hartford. Although the record discloses that Spurlin was served with process on September 22, 1984, he never filed an answer or any other response to the suit. Both Hartford and Liberty Mutual took the position that they owed Spurlin no coverage under their policies.

Due to Spurlin's failure to plead, the Birdsongs requested, and the court granted, an order of default against Spurlin on March 12, 1985. On April 15, 1985, Jalousie moved to vacate the default, but the motion was denied on

---

1. Mrs. Birdsong asserted a claim jointly with her husband for loss of consortium.

2. The other defendants are not relevant to this appeal.

July 1, 1985, based on Jalousie's lack of standing.[3] In that motion, which sought in the alternative to stay entry of a default judgment pending resolution of the issue of insurance coverage for Spurlin, counsel for Jalousie stated an intention to file a declaratory judgment action within 30 days in order to resolve the question of whether Spurlin was entitled to coverage by Hartford or Liberty Mutual. Nevertheless, no declaratory judgment action was ever instituted.

Subsequently, trial was scheduled for March 31, 1986. Warner Fruehauf, Duralite, and Jalousie had been active participants in discovery and were preparing to go to trial. On February 18, 1986, however, the Birdsongs moved to dismiss the claims against those three defendants pursuant to Rule 2–506(b). The court granted that motion for voluntary dismissal with the consent of counsel for the parties involved.

Seventeen days later, on March 7, 1986, Hartford moved to intervene as a defendant in the case pursuant to Rule 2–214(a). The motion was filed by the same attorney who had been counsel for Jalousie. Hartford asserted that counsel for the Birdsongs had taken the position that Jalousie's liability policy with Hartford afforded coverage to Spurlin, a position with which Hartford continued to disagree. While Jalousie was a defendant, Hartford felt that its interests were adequately protected since it had provided Jalousie's counsel. With Jalousie dismissed from the case, along with every other defendant represented by counsel (*i.e.*, Warner Fruehauf and Duralite),[4] Hartford feared that the Birdsongs would present a case for damages against Spurlin unopposed and then seek to enforce the judgment against Hartford pursuant to Md.Code (1957, 1986 Repl.

---

**3.** Md. Rule 2–613(c) states: "The *defendant* may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." (Emphasis added.)

**4.** The remaining defendants were unrepresented by counsel.

Vol.), Art. 48A, § 481.[5]  Hartford sought to assure the court that its intervention in the action would not require postponement of the trial, representing that its counsel was familiar with the case due to his prior involvement as counsel for Jalousie.  Nevertheless, after hearing argument the same day the motion was filed, Judge Elsbeth L. Bothe denied Hartford's motion to intervene.[6]

On March 19, 1986, Liberty Mutual filed a motion to intervene based essentially on the same grounds as were advanced in Hartford's motion.  In addition to its motion to intervene, however, Liberty Mutual filed a motion for continuance of the trial date, asserting a need to conduct additional discovery as well as a conflict in its counsel's schedule.[7]  Like Hartford, Liberty Mutual continued to deny coverage for Spurlin.  On March 21, 1986, Judge Bothe denied Liberty Mutual's motion to intervene, thereby rendering moot its accompanying motion for a continuance.[8]

### MOTION TO DISMISS APPEAL

■  We first consider the appellees' motion to dismiss the appeal on grounds of mootness.  In support of their motion,

---

5.  Section 481 provides:
      No liability insurance policy issued in this State shall contain any requirement for the payment of liability or loss under the policy, by the assured, but all such policies shall provide in substance that the bankruptcy or insolvency of the assured shall not release the insurer from liability; that if an execution upon any final judgment against the assured is returned unsatisfied, in whole or in part, in an action brought by the injured or by another person claiming, by, through, or under the injured, then an action may be maintained by the injured, or by such other person against the insurer under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding.

6.  The hearing on Hartford's motion was not transcribed, and Judge Bothe did not file a written opinion.

7.  Liberty Mutual did not employ the same counsel as had represented Warner Fruehauf and Duralite prior to their dismissal.

8.  The proceedings before Judge Bothe again were not recorded.

the appellees assert that the sole purpose of the appellants' motions to intervene was to permit the appellants to participate in a hearing which had been scheduled pursuant to Rule 2–613(e) for March 31, 1986 to determine the amount of Mr. and Mrs. Birdsong's damages. Because that hearing was held as scheduled and resulted in a judgment in favor of Victor Birdsong in the amount of $3,000,000 plus costs, the appellees contend that the issue presented in this appeal is now moot.

■ "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Koontz v. Ass'n of Classified Employees*, 297 Md. 521, 529, 467 A.2d 753 (1983); *Attorney General v. Anne Arundel County School Bus Contractors Ass'n*, 286 Md. 324, 327, 407 A.2d 749 (1979). Here, if the appellants' motions to intervene were improperly denied, we could reverse those orders, vacate the judgment entered in favor of Mr. Birdsong, and remand the case for a new trial on the issue of damages. Rule 1074a. *See Maryland-Nat'l Capital Park and Planning Comm'n v. Washington Nat'l Arena*, 30 Md.App. 712, 714, 354 A.2d 459 (1976). Accordingly, the issue raised by the appellants is not moot, and we deny the appellees' motion to dismiss the appeal.[9]

## INTERVENTION

Rule 2–214 is the successor to former Rule 208. With respect to intervention as of right, Rule 2–214 states:

(a) Of Right.—Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person

---

**9.** We also note that denial of intervention claimed as of right under Rule 2–214(a), as under its predecessor, former Md. Rule 208a., is an appealable final order. *See County Comm'rs of Carroll County v. Gross*, 301 Md. 473, 476, 483 A.2d 755 (1984); *Maryland Radiological Soc'y, Inc. v. Health Services Cost Review Comm'n*, 285 Md. 383, 388 n. 4, 402 A.2d 907 (1979).

has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

The language of section (a) is taken almost verbatim from Fed.R.Civ.P. 24(a). Even under the language of former Rule 208a., which differed from the federal rule following amendment of the federal rule in 1966, the Court of Appeals relied on the federal cases construing Rule 24 as an interpretive guide. *Citizens Coordinating Committee on Friendship Heights, Inc. v. TKU Associates,* 276 Md. 705, 712, 351 A.2d 133 (1976). Therefore, in interpreting the new rule, we shall look for guidance to federal case law interpreting Fed. Rule 24(a) as well as to Maryland case law interpreting former Md. Rule 208a.

The appellants in the case *sub judice* claim "an interest relating to the property or transaction that is the subject of the action" under Rule 2–214(a)(2). The federal appellate courts have imposed four requirements for intervention as of right under Fed. Rule 24(a)(2):

(1) the application for intervention must be timely;
(2) the applicant must have an interest in the subject matter of the action;
(3) disposition of the action would at least potentially impair the applicant's ability to protect its interest; and
(4) the applicant's interest must be inadequately represented by existing parties.

*Texas v. United States Dep't of Energy,* 754 F.2d 550, 552 (5th Cir.1985); *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Services, Ltd.,* 736 F.2d 384, 386 (7th Cir.1984); *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978). Failure to satisfy any one of the four requirements is sufficient to warrant denial of a motion to intervene as of right. *Commodity Futures*

*Trading Comm'n v. Heritage Capital Advisory Services, Ltd., supra,* 736 F.2d at 386.

The appellants in their briefs and at argument attempted to focus attention on the necessity of protecting their interests and on the inadequate (or lack of) representation by existing parties, *i.e.,* the third and fourth requirements for intervention as of right. Before even reaching those considerations, however, the appellants must overcome the obstacles presented by the first and second requirements (timeliness and existence of an interest in the litigation). We shall discuss those requirements *seriatim.*

### Timeliness

Rule 2–214(a) clearly requires a "timely motion" as a prerequisite to intervention as of right. Thus, the timeliness of a motion to intervene is a threshold issue to be resolved before reaching the substantive merits of the motion. *Maryland Radiological Soc'y, Inc. v. Health Services Cost Review Comm'n,* 285 Md. 383, 388, 402 A.2d 907 (1979); *Montgomery County v. Ian Corp.,* 282 Md. 459, 465, 385 A.2d 80 (1978) (quoting *NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648, 662–63 (1973)). Resolution of the timeliness question "is dependent upon the individual circumstances of each case and rests in the sound discretion of the trial court, which, unless abused, will not be disturbed on appellate review." *Maryland Radiological Soc'y, Inc. v. Health Services Cost Review Comm'n, supra,* 285 Md. at 388, 402 A.2d 907. The Court of Appeals, while cautioning that "all relevant circumstances should be taken into account," *id.,* has identified four factors in particular as a general guide for assessing the timeliness of an intervention motion:

> one, the purpose for which intervention is sought; two, the probability of prejudice to the parties already in the case; three, the extent to which the proceedings have progressed when the movant applies to intervene; and

four, the reason or reasons for the delay in seeking intervention.

*Id.* at 389, 402 A.2d 907.

■ The record does not reflect to what extent, if at all, the hearing judge relied on untimeliness as the basis for denial of the appellants' motions to intervene.[10] We are convinced, however, that if untimeliness was the basis for denial of the motions, those rulings do not constitute an abuse of discretion.

Hartford filed its motion to intervene on March 7, 1986, 24 days prior to the scheduled start of the hearing on damages. Although Hartford asserted that its intervention would not result in a delay of the proceedings, such a position seems unrealistic to us. With little more than three weeks remaining until trial, intervention of a new party, even one whose counsel was totally familiar with the case, almost certainly would have caused delay. As an intervening party, Hartford not only would have been entitled to conduct discovery but would have been subject to discovery requests by the appellees as well.[11] Despite Hartford's assertion to the contrary, it is unlikely that such discovery could have been completed within the time remaining prior to the scheduled trial date. Liberty Mutual, which filed its motion to intervene on March 19, 1986, readily conceded that it could not go to trial on March 31 by filing a motion for a continuance in conjunction with its motion to intervene. Therefore, intervention at the point requested by the appellants entailed likely, if not inevitable, delay in the proceedings, with the attendant disruption in

---

**10.** As noted earlier, the hearings were not recorded, and Judge Bothe did not file a written opinion.

**11.** Hartford acknowledged in its motion to intervene that it intended to take Victor Birdsong's deposition and that it also contemplated "possibly taking the deposition of Plaintiffs' medical expert, and perhaps naming a medical expert of its own to testify for the defense in this case." Had Hartford been allowed to intervene, the appellees would have been entitled to take the deposition of any experts named by Hartford.

witness scheduling, availability of experts, and the calendars of the court and counsel.

Moreover, the appellants concede that they knew at least several months before attempting to intervene that the appellees' counsel was of the view that one or both of the appellants might be liable for any judgment against Jake Spurlin. In spite of this awareness, they waited until the last few weeks prior to trial to file their motions to intervene.

■ The appellants take the position that their interests were protected while their named insureds remained in the case as defendants and that it was only after their insureds were dismissed that the need to intervene arose. We reject that excuse for the delay in seeking to intervene. The interests of the appellant insurance companies and their insureds were not identical with respect to the issue of coverage for Jake Spurlin. The attorneys retained to defend Jalousie, Warner Fruehauf, and Duralite were involved in the case to protect the interests of those defendants, not to limit the award of damages against Spurlin. If the appellants' interest in a judgment against Spurlin was such that intervention was warranted, they should have moved to intervene prior to the dismissal of their named insureds instead of monitoring the action through counsel for the named insureds.[12] An applicant's delay in seeking intervention after becoming aware of an interest in the action is one of the factors which may be considered in ruling on the timeliness of a motion to intervene. *See NAACP v. New York, supra,* 413 U.S. at 366–68, 93 S.Ct. at 2603–04, 37

---

12. The appellants also had other options available to protect their rights, including instituting a declaratory judgment action to resolve the issue of coverage for Spurlin. *See* Md.Code (1974, 1984 Repl. Vol.), §§ 3–401 to 3–415 of the Cts. & Jud.Proc. Article. Although the appellants contend that they could not find Spurlin, a necessary party to such a proceeding, and therefore could not have served him with process, this did not preclude them from filing the action. Moreover, the record fails to reflect extensive efforts by the appellants to locate Spurlin.

L.Ed.2d at 663–64; *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981); *Equal Employment Opportunity Comm'n v. United Air Lines, Inc.*, 515 F.2d 946, 949 (7th Cir.1975). *Accord Montgomery County v. Ian Corp., supra*, 282 Md. at 465–66, 385 A.2d 80. Therefore, it was within the hearing judge's discretion to consider the appellants' failure to act promptly in denying their motions to intervene.

Considering all the circumstances, a finding of untimeliness would have been well within the trial court's discretion. Normally this would end our inquiry. Nevertheless, in the absence of an explicit statement that the denials of the intervention motions were based on untimeliness, we will go beyond that threshold question to consider whether the appellants asserted a sufficient interest to warrant intervention.

### *Sufficiency of Interest*

■ Under Rule 2–214(a)(2), a person seeking to intervene as of right must claim "an interest relating to the property or transaction that is the subject of the action." In order to be a ground for intervention, the interest asserted must be one which it is essential to protect and which is not otherwise protected. *Citizens Coordinating Committee on Friendship Heights, Inc. v. TKU Associates, supra*, 276 Md. at 712, 351 A.2d 133; *Shenk v. Maryland District Savings & Loan Co.*, 235 Md. 326, 327, 201 A.2d 498 (1964). *See also Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580, 589 (1971) (interest contemplated by Fed. Rule 24(a)(2) is a "significantly protectable interest"); *Southern Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C.Cir.1984); *Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir.1982).

■ In the case *sub judice*, the appellants' alleged interest was in preventing the appellees from obtaining a large damage award against Spurlin which might then be en-

forced against the appellants pursuant to Md.Code, *supra*, Art. 48A, § 481. The problem with asserting such an "interest" is that it is inconsistent with the appellants' denial of coverage for Spurlin under their liability policies. Throughout the underlying phases of the litigation, the appellants disclaimed coverage for Spurlin, did not attempt to defend him, even under a reservation of rights, and failed to institute proceedings to establish the status of coverage for Spurlin. In their motions to intervene, both appellants continued to deny coverage to Spurlin.[13] Because we cannot reconcile the appellants' assertions, on the one hand, that Spurlin was not covered, and, on the other, that they have a protectable interest which warrants intervention as of right, we reject their argument that such an interest exists.

Hartford cites only one case in which an insurance carrier was found under similar circumstances to have an interest warranting intervention as of right. In *Lawrence v. Burke*, 6 Ariz.App. 228, 431 P.2d 302 (1967), the insurer had denied coverage to its insured in a personal injury action against the insured. After a default judgment was obtained against the insured and damages set at $300,000, the plaintiffs sought to enforce the judgment against the insurer in a second action. The insurer then sought to intervene in the prior action to set aside the default judgment. The trial court allowed intervention and the appellate court affirmed, stating that the insurer had "a definite interest in the lawsuit." *Id.* 431 P.2d at 310.

To the extent that *Lawrence* supports the appellants' position, we are not persuaded to follow it. Furthermore, we believe that *Lawrence* is distinguishable from the instant case in that the insurer there, at the time it sought to intervene, changed its position and acknowledged potential liability. *Id.* at 307. *Lawrence* also held that the insurer

---

**13.** We note that the appellants, while asserting that Spurlin's alleged tortious conduct fell within a policy exclusion, failed to furnish copies of the pertinent liability policies.

had a duty to defend the insured in the underlying action. *Id.* at 309. These factors are not present in this case, where the appellants have been unwavering in their denial of coverage to Spurlin.

We are similarly unpersuaded by Liberty Mutual's attempt to analogize the circumstances of this case to the situation confronted by automobile insurers providing uninsured motorist coverage. An insurer has a right to intervene in a tort suit by its insured against an uninsured motorist because a judgment against the uninsured motorist, by default or otherwise, may be binding upon the insurer. *Nationwide Mutual Insurance Co. v. Webb*, 291 Md. 721, 738, 436 A.2d 465 (1981). The insurer, however, has acknowledged coverage in such cases and is attempting to limit the liability of the uninsured motorist. Such is not the case here because the appellants have disclaimed coverage.

Even were we able to overlook the inconsistency in the appellants' position, we would be inclined to find their asserted interests insufficient to warrant intervention. The appellants' argument in favor of intervention was predicated on the possible occurrence of two events: an award of damages against Spurlin and an attempt by the appellees to enforce such an award against the appellants. While there may be some substance to the appellants' fears concerning those events,[14] we believe that at the point intervention was sought those fears were "merely speculative" and afforded "no present basis upon which to become a party to the proceedings." *Shenk v. Maryland District Savings & Loan Co., supra,* 235 Md. at 327, 201 A.2d 498.

The appellants' interest in the outcome of the trial on the issue of damages is a contingent interest rather than the "direct, significant legally protectable interest" required for intervention as of right. *Wade v. Goldschmidt, supra,* 673 F.2d at 185. Such contingent interests have been rejected

---

14. As we noted earlier, the first of the two events has occurred.

as the basis for intervention by other courts. *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871 (2d Cir.1984), is particularly instructive. In that case a dental laboratory sued an alloy supplier alleging, *inter alia*, breach of contract. The supplier's insurer advised that while it would provide a defense, it would not indemnify the supplier for "intangible losses" alleged in the suit. The insurer subsequently sought to intervene in the action for the limited purpose of proposing interrogatories on the issue of damages for submission to the jury. The insurer contended that, because it was obligated to pay only for property damage and not intangible losses, it was critical to ascertain what portion of any damage award was attributable to each. The proposed interrogatories would have required the jury to specify the factors taken into account in arriving at any award.

In upholding denial of the insurer's motion to intervene, the federal appellate court held that the insurer failed to satisfy the interest requirement for intervention as of right under Fed. Rule 24(a)(2). The court first pointed out that the transaction that was the subject matter of the action was the supplier's delivery of allegedly defective alloy to the laboratory, whereas the insurer's interest was in the amount it would have to pay if the laboratory established liability. *Id.* at 875. In addition, the court noted that the insurer's interest depended on two contingencies: (1) a jury verdict for the laboratory, and (2) a finding in litigation not yet commenced between the insurer and the supplier (its insured) that the insurer was not responsible for indemnification of certain types of losses under the terms of the policy. *Id.* Under those circumstances, the court found no interest satisfying Rule 24(a)(2). *Id.* at 876.

■ While the case *sub judice* is somewhat dissimilar in its factual details, the same principles apply.[15] The appel-

---

**15.** If anything, the insurer in *Restor-A-Dent* had a stronger case for intervention since it at least acknowledged partial responsibility for a

lants' interest was in limiting the amount of their potential liability rather than in the transaction that was the subject of the action. As stated earlier, their interest depended on two contingencies: a judgment against Spurlin and a subsequent action to enforce that judgment against the appellants. Therefore, we conclude that the appellants failed to assert interests sufficient to warrant intervention as of right under Rule 2–214(a)(2).

In summary, we hold that whether its decision was based on untimeliness or on the lack of an interest sufficient to warrant intervention, the trial court did not err in denying the appellants' motions to intervene.

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY THE APPELLANTS.

---

possible judgment against its insured, unlike the appellants here, who disclaimed coverage completely.