**Christopher BRIDGE, Plaintiff,**

v.

**AIR QUALITY TECHNICAL SERVICES, INC., et al., Defendants.**

**Civ. No. 98–0051–B.**

United States District Court,
D. Maine.

Sept. 29, 1999.

ORDER AND MEMORANDUM

BRODY, District Judge.

In this personal injury action, one of the defendants, IEA, Inc. ("IEA"), failed to appear and the clerk entered a default against IEA on May 12, 1999. Three months later, Gulf Insurance Company, Inc. ("Gulf"), one of IEA's insurers, filed a motion to intervene, which is now before the Court. Gulf seeks intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure in order to reopen discovery as to both liability, in order to determine whether to file a motion to set aside the default, and damages, in order to participate in the upcoming hearing on damages.

For the reasons stated below, the motion to intervene is GRANTED IN PART and DENIED IN PART.

## STATEMENT OF FACTS

The underlying litigation in this case involves an injury Christopher Bridge suffered when a container on board a plane he was piloting released toxic gases into the cabin. Bridge brought claims against various defendants, including IEA, the company that was to receive the container. At the time Bridge sustained this injury, IEA was operating under a series of casualty insurance policies that it had purchased from Gulf. Gulf's managing agent, Media/Professional Insurance ("Media") of Kansas City, Missouri, issued these policies to IEA.

On September 25, 1997, Media received a copy of a complaint ("1997 complaint") regarding this matter that was prepared for filing in the Superior Court of Hancock County, Maine. In response, Media twice called the clerk of that Court, on October 24, 1997 and on April 9, 1998, and was told that no such complaint had been filed. On November 17, 1998, IEA's insurance agent sent Media another complaint ("1998 complaint") that began the underlying litigation in this case when it was filed in this Court on March

17, 1998. Media states that it was not informed that the complaint had been filed or that IEA had been served. Media made no inquiry with regard to this complaint; it did not call this Court or any of the parties to discover the status of the case. Since IEA was a debtor in a bankruptcy proceeding in the Bankruptcy Court for the District of New Jersey, it was under an automatic stay order and thus had not been served as of November 17, 1998. Upon the motion of a co-defendant in this case, however, the Bankruptcy Court modified the stay order on January 4, 1999, "only to the extent that [the] parties are entitled ... to proceed against the Debtor's insurer." *In re American Environmental Network, et al.,* Nos. 98–22171/NLW through 98–22187/NLW (Bankr. D.N.J. Jan. 4, 1999). After the modification of the stay order, service of IEA was effected on March 8, 1999. Since IEA failed to appear in the present action, the clerk entered a default against IEA on May 12, 1999.

Despite the fact that they received two copies of the complaint, one in 1997 and the other in 1998, Media and Gulf claim that they did not learn until July 15, 1999, that the suit against IEA had commenced upon the modification of the stay and that IEA defaulted. It was on that date that they received a letter from plaintiff's counsel informing them of the default along with a copy of the complaint and an acceptance of service executed by IEA's bankruptcy counsel. On July 19, 1999, Gulf received a copy of the notice setting a hearing on damages for August 17, 1999,[1] together with the plaintiff's brief on damages. On August 13, 1999, four days before the scheduled hearing on damages was to take place, Gulf filed a motion to intervene as a defendant. Gulf attached to their motion to intervene their answer to the complaint that Mr. Bridges filed in this Court. Although Gulf has consistently and continuously denied that the policies it provided IEA afford coverage for liability arising out of any of the facts that could support the allegations in the complaint, they now seek to intervene in this matter. Gulf also states that IEA has not authorized Gulf to represent it in this action unless Gulf waives all possible claims against IEA's bankrupt estate.

## DISCUSSION

### I. STANDARD FOR INTERVENTION

An applicant who seeks to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure must meet four requirements. First, the application must be timely. Second, the applicant must claim "an interest relating to the property or transaction which is the subject of the transaction." *See* Fed R. Civ. P. 24(a)(2). Third, the applicant must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." *Id.* Fourth, the applicant must show that his/her interest is not adequately represented by the existing parties. *Id.* "An applicant who fails to meet any one of these requirements cannot intervene as of right under Rule 24(a)(2)." *Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 637 (1st Cir.1989) (citation omitted).

### A. The Liability Phase

■ We begin by discussing Gulf's interests. Although there is no precise definition of what constitutes a sufficient interest to establish a right to intervene, the intervenor's interest must be direct and not contingent. *See Dingwell,* 884 F.2d at 638. In other words, the intervenor must stand to gain or lose upon a determination of IEA's liability.

■ Gulf claims that it has two interests justifying intervention. First, Gulf contends that if it is later held to afford coverage for plaintiff's injuries, it will be bound by any judgment of this Court. Gulf therefore claims an interest in minimizing IEA's liability. Second, Gulf asserts an interest "in determining and litigating whether the facts, if any, on which the liability of defendant IEA is based also trigger coverage under its poli-

---

1. The damages hearing was subsequently continued and will be rescheduled after the filing of this order.

cy." (Gulf's Motion for Leave to Intervene at 4.)

Gulf's interests are contingent. In *Dingwell*, the First Circuit held that an insurer has a direct interest in a lawsuit against its insured when the insurer admits that the injured party's claim is covered by the policy in question. *Id.* However, "when the insurer offers to defend the insured but reserves the right to deny coverage ... the insurer's interest in the liability phase of the proceeding is contingent on the resolution of the coverage issue." *Id.* (citing *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874–76 (2d Cir.1984); *Donna C. v. Kalamaras*, 485 A.2d 222, 223–24 (Me. 1984)(Maine Rules of Civil Procedure)). The *Dingwell* Court held that such a ruling was based on the "well-established policy" of preventing insurers who reserve the right to deny coverage from controlling the defense brought against its insured. *Id.* at 639. During the liability phase of a proceeding, the insured's interest would be in establishing facts to ensure non-coverage as much as, if not more than, to show the insured's non-liability. *See State ex rel. Mid–Century Ins., Inc. v. McKelvey*, 666 S.W.2d 457, 459 (Mo. Ct.App.1984)("The defense would be encumbered by the overhanging issue of policy coverage.")(Missouri Rules of Civil Procedure); *see also Hartford Accident and Indem. Ins. Co. v. Birdsong (Birdsong II )*, 78 Md.App. 343, 553 A.2d 251, 258 (1989)(holding that the insurer's interest "is not necessarily in exculpating [the defendant] but in simply avoiding any liability to themselves")(Maryland Rules of Civil Procedure). Furthermore, allowing intervention would give the insurer "a double bite at escaping liability," since the insurer could avoid paying the injured party by winning either at the insured's trial on the question of the insured liability, or in a later action on the issue of coverage. *Dingwell*, 884 F.2d at 639 (citing *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246, 251 (1987)).

Because Gulf has reserved the right to deny coverage since it first heard about this case in 1997, it does not have a sufficient interest to intervene in the liability phase of this action. Gulf states that neither it nor Media contacted Plaintiff's counsel upon receiving the complaint because they "thought a reservation of rights was possible." (Gulf's Supp. Memo. on Intervention at 2). Indeed, Media, after receiving the 1997 complaint, informed IEA of their "preliminary conclusion that the Gulf policy did not afford coverage for the injuries averred in the complaint." (Aff. of Sammye J. Hoss, Assistant Vice–President of Media).

Gulf attempts to distinguish this case from cases finding that the insurer's interest was contingent and thus insufficient to warrant intervention. First, Gulf asserts that in *Dingwell* the intervenor had timely notice of the underlying action, and elected to reserve its rights, whereas Gulf claims that it "did not receive notice of the status of this action at a time when it could have provided a defense and avoided default." (Gulf's Supp. Memo. on Intervention at 2.) While Gulf may very well have received notice based on the fact that it twice received copies of the complaint, it must be pointed out that, according to Gulf, IEA did not allow Gulf to provide such a defense.

Gulf also states that this case is distinguishable from cases ruling against insurer intervention because the insured here is bankrupt and has no interest in this case. Given the stay order and the bankruptcy proceedings, Gulf argues that any judgment creditors could not look to IEA for payment. *Dingwell* is not so easily distinguished. In that case, the insured, Dingwell, reached an agreement with other Potentially Responsible Parties ("PRPs") in which the PRPs agreed to waive claims against Dingwell personally and to seek satisfaction of Dingwell's obligations solely from assets that might be available under his insurance policies. *Dingwell* at 632. The First Circuit concluded that the insurers' interest remained contingent "regardless of the fact that the settlement agreement provided that the resulting judgment could not be enforced against Dingwell personally." *Id.* The fact that IEA defaulted, rather than settled with Mr. Bridges, is of no consequence under this analysis. *See McKelvey*, 666 S.W.2d at 458–59 (holding that the insurer, who had reserved the right to deny coverage, had no right to intervene

over the insured objections even though the claim would go undefended and would likely end in a default judgment); *Hartford Ins. Co. v. Birdsong (Birdsong I )*, 69 Md.App. 615, 519 A.2d 219, 226 (1987) (holding that an insurer, who had reserved the right to deny coverage, had no right to intervene after the entry of default). Indeed, the *Dingwell* Court pointed out that the insurer's interest remains contingent regardless of how the insured and the injured party resolve the lawsuit. *Dingwell*, 884 F.2d at 639. Moreover, in this case, it appears that the modification of the stay order operated much like the settlement in *Dingwell:* the suit would go forward so long as the plaintiff would only pursue any potential insurance proceeds.

Gulf's also wishes to determine "whether the facts, if any, on which the liability of defendant IEA is based also trigger coverage under its policy." This interest is also not a sufficient. The subject matter of this case is the liability of IEA, not whether the facts trigger coverage under the insurance policies Gulf provided IEA. *See Dingwell*, 884 F.2d at 640 ("This lawsuit involves the apportionment of tort liability, not the respective rights and obligations of an insured and his insurers under their insurance policy.") Gulf can litigate those matters in a declaratory judgment action or when the plaintiff attempts to reach and apply any available insurance proceeds. Although Gulf complains that it may not be able to retry aspects of the underlying litigation in a subsequent reach and apply action, that is not a concern to the Court. The First Circuit has stated:

> The fact that Maine law may preclude the insurers from raising certain defenses during an enforcement proceeding does not alter our conclusion. Even if it were true that Maine law does not allow the insurers to raise certain defenses during an enforcement proceeding, that law reflects a "considered policy judgment" made by the Maine legislature. [citation omitted] If the insurers believe that such a law is unconstitutional, they can make a suitable objection during the enforcement action, whether it is brought in federal court or in state court. We will not permit them, however, to remedy the deficiencies they perceive in Maine's reach and apply statute by invok-

ing Rule 24(a)(2) to drag substantive issues of insurance law into a lawsuit whose subject matter is the allocation of liability among joint tortfeasors.

*Dingwell* at 640. Since Gulf does not have a sufficient interest warranting intervention, the Court, in denying Gulf's motion to intervene on the question of liability, need not consider the other factors necessary for intervention.

## B. The Damages Phase

■ Although Gulf may not intervene on the question of liability, it may intervene on the question of damages. As noted above, the concern of the First Circuit and other courts in denying intervention is that the insurer's interest is in avoiding liability themselves, whether by establishing facts that demonstrate non-coverage or the insured's non-liability. Once liability is established, however, the concern that insurer would use the liability phase of trial to establish non-coverage evaporates as does the concern that the insurer would get "a double bite at escaping liability." *Dingwell* at 639. At the damages stage of the proceedings, the insurer's interest becomes less contingent and more direct. It is true that Gulf may still be able to avoid liability in a future action by demonstrating that the facts that led to Mr. Bridge's injury are not covered under its policies to IEA. Thus some contingency remains. Yet given the circumstances of the defendant in this case, Gulf is the only party that would be responsible for damages to Mr. Bridges. Since IEA defaulted, there is obviously no current party to represent Gulf's interests. The Court recognizes that courts are divided over whether insurers have the right to intervene after default and before a hearing on damages. *Compare Birdsong I,* 69 Md.App. 615, 519 A.2d 219, 226 (1987) (holding that an insurer, who had reserved the right to deny coverage, had no right to intervene after the entry of default and before hearing on damages, which resulted in the court granting the plaintiff a default judgment worth over $3,000,000), *and McKelvey,* 666 S.W.2d at 458–59, *with H.B.H. v. State Farm Fire and Cas. Co.,* 170 Ariz. 324, 823 P.2d 1332, 1339 (1991)(overturning the trial

court's denial of intervention and allowing the insurer to intervene "solely for the purpose of contesting the reasonableness of the damages award"). The Court finds that, since the policy for disallowing intervention at the liability stage does not exist at the damages stage, allowing Gulf to intervene at the damages hearing will allow Gulf an opportunity to protect its interest.

The only hurdle remaining to Gulf's motion to intervene on damages is the timeliness requirement. There is no bright-line rule delineating when a motion to intervene is or is not timely. *See Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1230 (1st Cir.1992). Timeliness "is to be determined by the court in the exercise of its sound discretion." *See NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). In *Culbreath v. Dukakis,* 630 F.2d 15 (1st Cir.1980), the First Circuit specified four factors to consider in evaluating the timeliness of motions to intervene. As stated in *United States v. Metropolitan Dist. Comm'n,* 865 F.2d 2 (1st Cir.1989), the four factors are: (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention. *Id.* at 5.

Although Gulf filed its motion just four days before the hearing on damages, the Court finds that the motion is timely. *See Caterino v. Barry,* 922 F.2d 37, 43 (1st Cir.1990)(finding that a motion to intervene, filed three months before trial, was untimely, but was "confident" that the trial court would later consider and grant a motion to intervene on the issue of damages). Granting this motion will not cause undue prejudice to the parties.

Therefore, the Court DENIES Gulf's motion to intervene for the purpose of setting aside the default and reopening the question of liability. The Court GRANTS Gulf's motion to intervene on the question of damages.

*SO ORDERED.*