487 A.2d 651

**WASHINGTON SUBURBAN SANITARY COMMISSION**

**v.**

**Morris FRANKEL et al.**

**No. 58, Sept. Term, 1984.**

Court of Appeals of Maryland.

Feb. 7, 1985.

302

Carl Harrison Lehmann, Upper Marlboro, and Henderson J. Brown, Hyattsville, for appellant.

David H. Bamberger, Baltimore, and Aaron L. Handelman, Washington, D.C. (E. Freemont Magee, Baltimore, and Gerald W. Heller and Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Washington, D.C., on the brief), for appellees.

Argued before MURPHY, C.J., SMITH, COLE, RODOWSKY and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit (retired), Specially Assigned.

RODOWSKY, Judge.

This case presents the question: Are the owners of dominant lands which are benefited by a covenant restricting the use of servient land entitled to just compensation because the servient land has been condemned for a public use prohibited by the restriction? Unfortunately we do not reach the question because there is no appealable judgment.

Three declarations executed, acknowledged, and recorded among the land records in 1956 and in 1959 by the then owners of 347.4369 acres of Montgomery County land (the parent tract) imposed restrictive covenants on the parent tract.[1] The assemblage so restricted has been developed as an industrial park. In the introductory "WHEREAS" clauses of the declarations each grantor recited that it was

desirous of subjecting the real property described in Clause I to the conditions, covenants, restrictions, reservations and easements hereinafter set forth, each and all of which is and are for the benefit of said property and for each owner thereof, and for the benefit of adjacent properties and properties in the general neighborhood and each owner thereof and shall inure to the benefit of and pass with said hereafter described property of Grantor and each and every parcel thereof and shall also inure to the benefit of and pass with said adjacent properties and properties in the general neighborhood and each and every parcel thereof and shall apply to and bind the successors in interest and any owner thereof.

The pertinent covenants provide that

[n]o waste material or refuse may be dumped or permitted to remain upon any part of the property outside of buildings[.]

and that

[n]o emission of objectionable odors outside the lot lines shall be permitted. . . .

---

**1.** Two declarations were made by Contee Sand & Gravel Company, Inc., one embracing 197 acres and the second embracing 100 acres. The third declaration, made by Francis S. Carnes, embraced 50.4369 acres. No party to this case makes any contention going to the merits which requires distinguishing between the provisions of any of the declarations or between sites within the acreage described in one or another of the declarations, other than the distinction between land owned by Washington Suburban Sanitary Commission and that owned by others. Accordingly we treat the declarations as if they were one instrument embracing all 347.4369 acres. When quoting from the declarations we quote from the one recorded at liber 2267, folio 308 (Contee—197 acres).

Furthermore, the covenants specifically prohibit the use of the land for a "[d]ump or sanitary fill."

One of the parts into which the declarations are divided, that headed "GENERAL APPLICATION," contains ¶ (c) which in relevant part reads:

> The covenants herein set forth shall run with the land and bind the present owners, their successors and assigns, and all parties claiming by, through or under it shall be taken to hold, agree and covenant with the owner of said building sites, its successors and assigns, and with each of them, to conform to and observe said restrictions as to the use of building sites, and the construction of improvements thereon, and the Grantor or the owner of any of the adjacent land shall have the right to sue for and obtain an injunction prohibitive or mandatory, to prevent the breach of or to enforce the observance of the restrictions above set forth, in addition to ordinary legal action for damages. . . .

On July 8, 1980, Washington Suburban Sanitary Commission (WSSC) acquired by condemnation the title to 115.48135 acres out of the parent tract.[2] The property condemned by WSSC is known as "Site 2." Site 2 was condemned for and is used for composting sewage sludge, a process which emits noisome odors. In the condemnation action the only defendants were two entities which then owned the parcels comprising Site 2. None of WSSC's adversaries in the case before us were condemnees in the action by which WSSC acquired Site 2.

The case before us is a declaratory judgment action brought on November 6, 1980, by WSSC. The legal relationship to be adjudicated is the entitlement, *vel non*, of identified and unidentified property owners to compensation

---

**2.** WSSC transposed this acreage figure to 151.48 in the caption of its declaration in the case which is now before us. The transposed figure has been used in the briefs of parties before this Court and before the Court of Special Appeals which utilized in its opinion the figure furnished by counsel. *Washington Suburban Sanitary Comm'n v. Frankel,* 57 Md.App. 419, 422, 470 A.2d 813, 815 (1984).

because of the use to which WSSC is putting Site 2. WSSC seeks a declaration that there is no entitlement to compensation. There are twenty-four identified defendants, eight of whom own properties outside of the parent tract.[3] In addition WSSC's declaration purports to sue

> all other persons claiming damages or payment of any kind, or relief of any kind, purportedly stemming from the violation, abrogation, or non-observance, or the anticipated violation, abrogation or non-observance of record covenants hereinafter identified, or for a purported "taking" of property rights or interests without the payment of just compensation, all stemming from the acquisition of land for a public use.

The circuit court signed an order of publication under the recited authority of former Maryland Rule 105 (Service of Process—In Rem or Quasi In Rem Jurisdiction ... Gen'l.) and of former Md.R. 111 (Land Action ... Gen'l.) directed to these unidentified persons. In this opinion the term "Claimants" refers to all those whom WSSC joined or purported to join as identified or unidentified defendants to the declaration.

Most of the Claimants filed counterclaims in which they asked for a declaration that the use made of Site 2 required WSSC to pay them compensation. These counterclaims also sought a monetary judgment in the amount of the compensation to which the counterclaimant was entitled.

On motion of one of the Claimants, The Chesapeake & Potomac Telephone Company of Maryland (C & P), the circuit court ordered a separate trial, as permitted by former Md.R. 502, of an issue of law. C & P framed the separate issue to be:

---

**3.** The eight identified owners of property outside of the parent tract whom WSSC joined as named defendants were plaintiffs in an action filed in the Circuit Court for Prince George's County against WSSC seeking to enjoin its acquisition of Site 2. They are respondents Blackburn, Cross, Peterson and Phillips. The equity suit was transferred to the Circuit Court for Montgomery County where it was designated Equity No. 74703.

Under the U.S. Constitution, Maryland Constitution and/or Maryland law are the restrictive covenants of record on Site 2 compensable property rights of the parties benefited or intended to be benefited thereby, including defendants, which the plaintiff (WSSC) must acquire by condemnation before it can use Site 2 for a sludge composting facility which will violate or breach those covenants?

On December 8, 1982, the circuit court in effect ruled that WSSC was obliged to pay compensation, without specifying to whom.[4] Thereupon, the Singer Company, one of the Claimants, acting "on behalf of all the Defendants herein," moved for an order certifying the December 8, 1982, ruling for immediate appeal pursuant to former Md.R. 605 a on the theory that the ruling was dispositive of WSSC's claim for a declaratory judgment. In an answer filed to that motion WSSC agreed that the ruling was so dispositive, and the circuit court entered the Md.R. 605 a certification.

On WSSC's appeal the Court of Special Appeals affirmed as to all "appellees" other than the eight identified Claimants who own property outside of the parent tract. As to those eight the intermediate appellate court vacated the circuit court judgment and remanded for a determination whether those persons owned properties which were "adjacent" or in the "general neighborhood," as the quoted terms

---

**4.** The memorandum and order of the circuit court concludes:

This member of the Court is persuaded that consideration must be given to the rights of the Defendants to enjoy their properties free from dumping and noxious odors. The manner of proof submitted by the taking authority may well obviate or mitigate the items of damages in regard thereto.

It is, by the Circuit Court for Montgomery County, Maryland, on this 8th day of December, 1982,

ORDERED that the Plaintiff's motion to exclude from consideration the defendants' claim for damages, including a claim for dumping and noxious odors, be, and the same hereby is, DENIED.

This memorandum and order was filed in both the law and equity cases. We are unable to find in the record transmitted to this Court the motion referred to in the order. We treat this order as ruling on the separate issue of law which is the way in which the parties have treated it.

were used in the declarations of restrictive covenants. *Washington Suburban Sanitary Comm'n v. Frankel,* 57 Md.App. 419, 436, 470 A.2d 813, 822 (1984). Additionally, the Court of Special Appeals remanded for further proceedings as to the amount of compensation payable to those appellees in whose favor the judgment had been affirmed.

This Court granted WSSC's petition for certiorari. It presents two questions:

    I.  Is violation of restrictive covenants by a public use on a servient tenement a taking of property from owners of dominant tenements for which just compensation must be made?

    II.  Is violation of restrictive covenants by a public use a taking of private property rights of the owners of neighboring property beyond the tract owned by the covenantor, though the declaration of covenants purports to apply to them?

There is a threshold question which we are obliged to raise *sua sponte.* That is whether there is an appealable judgment.

█  This case is not appealable on the theory relied upon by the parties. The Md.R. 605 a certification did not make the ruling on WSSC's requested declaratory judgment a final judgment on an entire claim.[5] WSSC's claim in this case was for a declaration on whether it was constitutionally obliged to pay just compensation to the owners of land benefited by the restrictive covenants. The declaration

---

**5.**  Former Md.R. 605 a read:

    Where more than one claim for relief is presented in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.

might answer the question in the affirmative or in the negative. While WSSC sought a negative answer, the circuit court's declaration was in the affirmative. Because, in the opinion of the circuit court, the answer was affirmative, an affirmative declaration was to be entered by the circuit court even if various Claimants had not counterclaimed. The difficulty is that most of the Claimants have also requested in their counterclaims monetary judgments for just compensation, if the circuit court entered an affirmative declaration on the compensability issue. But WSSC's claim for declaratory judgment and the requests of certain Claimants for monetary judgments are one and the same claim for purposes of applying former Md.R. 605 a. Thus, the entire claim has not been adjudicated in the circuit court by the ruling of December 8, 1982.

The foregoing analysis was spelled out in *East v. Gilchrist*, 293 Md. 453, 445 A.2d 343 (1982). That case was brought by taxpayers and property owners in Montgomery County who opposed locating a county-owned sanitary landfill near the town of Laytonsville on a residentially zoned site. These plaintiffs sought a declaratory judgment that a section of the Montgomery County Charter was valid and was violated by the proposed project. They also requested an injunction and money judgments, both to restore to the county monies allegedly illegally expended for the prohibited project, and to pay to the plaintiffs damages for personal injuries, inconvenience, and diminution of the value of their properties. Montgomery County counterclaimed for, and obtained, a declaration that the charter provision was invalid. Plaintiffs had the ruling on the counterclaim certified as a final judgment, appealed, and obtained certiorari from this Court prior to consideration by the Court of Special Appeals. We dismissed the appeal. Montgomery County's "'counterclaim' was at best a defense or denial of the plaintiff's demand," and not a separate claim. *Id.* at 461, 445 A.2d at 347 (footnote omitted). Because the issues of an injunction and damages requested by the plaintiffs remained undecided, but were parts of the same declaratory

judgment claim, there was no adjudication of an entire claim. The only difference between *East v. Gilchrist* and the instant case is that the position of the parties as plaintiff and defendant is reversed. Here WSSC sought a declaration that it had a valid defense to reasonably anticipated claims for compensation and the counterclaimants sought a contrary declaration together with damages. For purposes of whether an entire declaratory judgment claim has been adjudicated, the reversal of parties' positions from those in *East v. Gilchrist* is a distinction without legal difference. Accordingly, we vacate the judgment of the Court of Special Appeals.

■ Some of the Claimants have not filed counterclaims and it may well be that the declaratory judgment action could be considered terminated as to them. A judgment which terminates the action as to a party can be certified for immediate appeal under former Md.R. 605 a. *See Lang v. Catterton,* 267 Md. 268, 270–71, 297 A.2d 735, 737 (1972); *Himes v. Day,* 254 Md. 197, 203–05, 254 A.2d 181, 184–86 (1969); *Harkins v. August,* 251 Md. 108, 111, 246 A.2d 268, 270 (1968); *Durling v. Kennedy,* 210 Md. 549, 554, 123 A.2d 878, 880 (1956).

Were we to view the circuit court's certification as effectively making appealable the December 8, 1982, ruling on the ground that the declaratory judgment action terminated as to the non-counterclaiming defendants, the effect would be to put those parties out of court. We decline to reach the merits by applying that theory of appealability at the price of putting out of court parties who have had no opportunity to be heard on whether they wish that theory to be applied. *Cf. Sullivan v. Ins. Comm'r,* 291 Md. 277, 434 A.2d 1024 (1981) (dismissal of appeal without notice and opportunity to be heard held, on facts, to be a denial of due process).

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE APPEAL.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID 50% BY WASHINGTON SUBURBAN SANITARY COMMISSION, AND 25% BY THE SINGER COMPANY AND 25%, JOINTLY AND SEVERALLY, BY RESPONDENTS COMPUTER ENTRY SYSTEMS CORPORATION, RUBY BLACKBURN, CHARLES M. BLACKBURN, LEONARD L. CROSS, JOSEPHINE K. CROSS, MAURICE J. PETERSON, ALINE PETERSON, CECIL PHILLIPS AND NANCY C. PHILLIPS.