553 A.2d 251

The HARTFORD ACCIDENT AND INDEMNITY INSURANCE
COMPANY, et al.

v.

Victor W. BIRDSONG, et al.

No. 796, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Feb. 8, 1989.

M. Bradley Hallwig (Gregory L. VanGeison and
Anderson, Coe & King on the brief), Baltimore, for appel-
lant, Hartford Acc. & Indem. Ins. Co.

H. Thomas Howell (David M. Buffington, Daniel W. Whitney and Semmes, Bowen & Semmes on the brief), Baltimore, for appellant, Liberty Mut. Ins. Co.

Paul W. Spence (James M. Gabler, Phillips P. O'Shaughnessy, Sandbower, Gabler & O'Shaughnessy, P.A., Gerald H. Cooper and Cooper, Beckman & Tuerk, on the brief), Baltimore, for appellees.

Argued before WILNER, ALPERT and POLLITT, JJ.

WILNER, Judge.

In this appeal, we are asked to revisit *Hartford Ins. Co. v. Birdsong,* 69 Md.App. 615, 519 A.2d 219 (1987), confess that we were dead wrong in that case, and make appropriate amends. We shall, of necessity, revisit that decision, but we shall decline the invitation to engage in any expression of *nostra culpa.*

In May, 1980, Mr. and Mrs. Victor Birdsong were injured when a truck driven by one Jake Spurlin collided with the rear of their vehicle. The truck was owned by K.D. Jalousie of New Jersey, Inc. (Jalousie); it was en route to Baltimore to be refitted by Duralite Truck Bodies and Container Corporation (Duralite). Duralite had engaged T.R. Transport, Inc. to bring the truck to Baltimore, and T.R. Transport had hired Spurlin to do the driving. Jalousie was insured by Hartford Accident & Indemnity Insurance Company (Hartford); Duralite was insured by Liberty Mutual Insurance Company (Liberty Mutual). The present controversy stems from a disagreement as to whether either of those insurers also covered Spurlin.

In April, 1983, Mr. and Mrs. Birdsong sued Jalousie, Duralite, Spurlin, and the three trustees for what we assume was by then a defunct T.R. Transport, Inc. Mr. Birdsong sued for his own bodily injuries; he and his wife made a joint claim for loss of consortium. Hartford defended Jalousie; its assigned counsel filed a plea to the complaint and actively pursued a defense. Liberty Mutual did

likewise on behalf of Duralite. Spurlin failed to answer. One of the three trustees for T.R. Transport, Inc. was apparently never served; a second was served but failed to answer; the third filed an answer.

Shortly after Spurlin was served, counsel for the Birdsongs wrote to the Hartford-assigned lawyer for Jalousie, suggesting that Hartford should defend Spurlin. That suggestion was rejected. The Hartford/Jalousie attorney pointed out that the Hartford policy excluded from coverage anyone using the truck while working in the business of repairing it; he contended that, as Duralite had sent Spurlin to get the truck for the purpose of "servic[ing] and repair," Spurlin "is excluded from coverage under our policy and in our opinion would be covered under Liberty Mutual's policy."

Liberty Mutual had a different view. It concluded that T.R. Transport, Inc., Spurlin's employer, was an independent contractor insofar as Duralite was concerned and that

"Jake Spurlin's status as the employee of an independent contractor, in addition to other good and sound reasons, makes it manifestly plain that he was not an insured under the terms of the policy entered into between Liberty Mutual Insurance Company and Duralite Truck Body and Container Corporation. Thus, there is no duty on the part of Liberty Mutual Insurance Company to defend Jake Spurlin in the above captioned case."

Both companies, then, were content to let Mr. Spurlin fend for himself, notwithstanding that (1) he was apparently unrepresented, (2) he had failed to answer the complaint, and (3) his conduct and his status were obviously going to be the key factors in any eventual apportionment of liability to the other defendants. When Spurlin failed to respond, the Birdsongs moved for, and on March 12, 1985, obtained an order of default. *See* Md.Rule 2–613(a). A copy of that order was mailed, the same day, to Jalousie and Duralite. Duralite let the matter pass. Jalousie waited 34 days and then filed a motion to set aside or stay entry of a default

judgment against Spurlin "until a coverage dispute is resolved."

Jalousie confirmed in its motion that "there has been an allegation" that Spurlin is covered under one or more of the policies issued to Jalousie, Duralite, or T.R. Transport, Inc., and that the companies for those defendants "have not been able to resolve as to whom if anyone owes a duty to defend Jake T. Spurlin." It averred further that the companies "have been attempting to resolve their differences inter-company and there may well be coverage available to [Spurlin] by the carrier for one of the three above named defendants." It alleged, moreover, that "there is a viable defense to this case," pointing out that Jalousie had filed a third-party complaint against the manufacturer and seller of the truck, alleging "a brake failure on the vehicle which caused the accident."[1] If that claim were "viable," Jalousie contended, "it would be a viable defense to the claim of the plaintiffs against [Spurlin] and consequently, the default judgment for failure to file a plea would prejudice the defendant [presumably Spurlin] wrongfully as he would have a good and viable defense."

Jalousie claimed, finally, that "[Spurlin] being without counsel is not familiar with what is necessary to file the appropriate plea, and based upon the dispute between the insurance companies none of the defendants have come forward and filed a plea for fear of waiving any denial of coverage that they may have."

The relief actually sought by Jalousie in this motion was to deny or stay any "Final Order of Default" pending "a determination as to who has coverage for this defendant by

---

1. The third-party complaint had been filed by Jalousie on February 27, 1985. It asserted that "[i]mmediately prior to the collision which is the subject of the plaintiffs' Declaration," Spurlin "experienced a failure of the braking mechanism on the truck rendering him unable to stop the vehicle, and causing him to collide with the rear of the plaintiffs' vehicle" and claimed that "[t]he aforesaid brake failure was caused by a defect which existed in the braking mechanism at the time when the vehicle was sold and delivered to Jalousie."

filing of a Bill for Declaratory Judgment *which will be filed within 30 days from the date of this motion, involving all of the parties to this lawsuit and their respective insurance carriers.*" (Emphasis added.)[2]

The Birdsongs opposed Jalousie's motion on the grounds that (1) Jalousie had no standing to make the motion, (2) the motion, in any event, was untimely under Md.Rule 2–613(c), and (3) no substantial reason was given for Spurlin's failure to plead. The motion had been filed on April 15, 1985; it was denied on July 1, 1985. Yet at no time during that 2½ month interval (or afterward) did Jalousie or Hartford, its insurer, file the declaratory judgment action promised in the motion.

Aside from some discovery and a relatively unimportant amendment to the complaint, nothing more transpired in the case until February 18, 1986, when Birdsong moved to dismiss his complaint against Jalousie and Duralite.[3] The motion was filed pursuant to Md.Rule 2–506(b), which permits a plaintiff to dismiss an action "only by order of court and upon such terms and conditions as the court deems proper." The motion was co-signed, and thus consented to, by counsel for Jalousie and Duralite; the remaining defendants, however—the two trustees for T.R. Transport, Inc.—did not co-sign or otherwise indicate their consent.

Apparently treating the dismissal against those two defendants as a *fait accompli*, notwithstanding the need for a

---

**2.** We express no opinion as to whether, under principles laid down in *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975), Hartford or Liberty Mutual could have successfully adjudicated this issue through a declaratory judgment action prior to trial of the underlying tort action. We note only that Hartford thought that they could and promised that they would.

**3.** On April 16, 1985, the Birdsongs sought and received an Order of Default against the non-responding trustee for T.R. Transport. No one complained about or sought to set aside that order. Counsel for the other trustee who had been served had earlier stricken his appearance, thus leaving the two trustees unrepresented in the action.

court order,[4] Jalousie's and Duralite's *insurers*—Hartford and Liberty Mutual—moved to intervene in the action as parties. The Hartford motion, filed March 7, 1986, was signed by the same lawyer who had co-signed the Birdsong motion to dismiss Jalousie. The Liberty Mutual motion was filed two weeks later, on March 19, 1986. Trial in the case was then scheduled to begin on March 31, 1986; the action had been pending for nearly three years.

The insurers complained that, with Jalousie and Duralite out of the case, the only remaining defendants would be unrepresented; they assumed, therefore, that the impending trial would be merely "an inquisition on damages" and that, at that "inquisition," the "Plaintiff will be unopposed." At the heart of the Hartford motion were the assertions that:

"10. The Hartford has a genuine interest in the outcome of the inquisition on damages against Spurlin because, in the event of a judgment being rendered against Spurlin that the Plaintiff is unable to satisfy by execution upon Spurlin, then the Plaintiff can institute an action against the Hartford pursuant to Article 48A, Section 481 of the Annotated Code of Maryland and assert whatever claim to coverage Spurlin had, and if successful, recover up to the [ ] amount of available insurance.

11. Because it is possible that a Court will determine that the Hartford's position on coverage regarding Spurlin is wrong, and that coverage is owed for this accident under the policy, the Hartford has an interest that is currently unprotected in the outcome of the inquisition on

---

4. Rule 2–506(a) allows for dismissal without leave of court but only if (1) the dismissal is filed before the adverse party has filed an answer or (2) all parties who have appeared in the action consent to the dismissal by stipulation. Obviously, those conditions were not satisfied. Yet, there is no indication in the record before us that an order allowing the dismissal was ever signed. The parties have nonetheless consistently maintained and acted on the premise that Jalousie and Duralite were, in fact, dismissed. For purposes of this appeal, we shall assume that somehow they *were* dismissed, or, at least, declare appellants estopped from contending otherwise.

damages. The purpose of this Motion is to permit the Hartford to intervene in this case as a party Defendant and appear at the inquisition on damages to oppose Plaintiff's claims for damages, and generally to insure that the jury get a balanced presentation regarding the nature, extent, and existence of the various personal injuries claimed by Plaintiff."

Liberty Mutual's motion, though worded differently, was similar in substance. Each company claimed intervention as of right pursuant to Md.Rule 2–214(a), asserting an interest in the action that, as a practical matter, would not be adequately represented by existing parties. In companion motions or memoranda, both companies made clear that, if allowed to intervene, they intended to undertake further discovery that almost surely would have required a postponement of the scheduled trial.[5]

Judge Elsbeth Bothe heard the motions promptly upon their respective filing and denied them. The proceedings in both instances were unrecorded, and no reasons appear in the record for the denials. On March 27, Hartford noted an appeal from the denial of its motion; Liberty Mutual filed an appeal on April 18.

Notwithstanding the appeal by Hartford, the case proceeded to trial as scheduled on March 31, 1986; the next day, the jury returned a verdict for Mr. Birdsong, against Spurlin only, for $3,000,000.

---

**5.** In an accompanying memorandum, Hartford "contemplate[d] possibly taking the deposition of Plaintiffs' medical expert, and perhaps naming a medical expert of its own to testify for the defense in this case" but blithely represented that "all of these matters can be resolved within the weeks that remain for the scheduled trial date." Liberty Mutual complained that, if the trial went forth as scheduled, it "will be denied the right of discovery, and the right to protect its interest at the time of trial," and it therefore moved for an indefinite postponement of the trial. Just what new facts either company expected to turn up that hadn't or couldn't have been revealed through the discovery that was or could have been undertaken during the nearly three years that the case had been pending is a mystery to us.

That fact was, of course, known to us when we considered the earlier appeals. We rejected the appeals, however, on two grounds, the second having two prongs.

We first observed that, to be entitled to intervene as of right under Md.Rule 2–214(a), the motion to intervene must be "timely," and that timeliness depends on the individual circumstances of each case. We pointed out that, while the record did not indicate whether Judge Bothe relied on untimeliness as a basis for denying the motions, if she did consider that as a basis, her rulings would not constitute an abuse of discretion. In that regard, we remarked that (1) the companies knew for at least several months before filing their motions that the Birdsongs believed that one or both of them might be liable for any judgment against Spurlin, (2) their interest in that issue was not protected by their representation of Jalousie and Duralite, who were unconcerned with the amount of any verdict against Spurlin, (3) "[i]n spite of this awareness, they waited until the last few weeks prior to trial to file their motions to intervene," and (4) despite Hartford's assertion to the contrary, intervention "almost certainly would have caused delay." *Hartford Ins. Co. v. Birdsong, supra,* 69 Md.App. at 623–25, 519 A.2d 219.

Because we could not be certain that the motions had, in fact, been denied on the ground of untimeliness, however, we proceeded then to address the substantive merit of the motions. Our conclusion as to that was stated at 626–27, 519 A.2d 219, as follows:

"In the case *sub judice,* the appellants' alleged interest was in preventing the appellees from obtaining a large damage award against Spurlin which might then be enforced against the appellants pursuant to Md.Code, *supra,* Art. 48A, § 481. The problem with asserting such an 'interest' is that it is inconsistent with the appellants' denial of coverage for Spurlin under their liability policies. Throughout the underlying phases of litigation, the appellants disclaimed coverage for Spurlin, did not attempt to defend him, even under a reservation of rights,

and failed to institute proceedings to establish the status of coverage for Spurlin. In their motions to intervene, both appellants continued to deny coverage to Spurlin. Because we cannot reconcile the appellants' assertions, on the one hand, that Spurlin was not covered, and, on the other, that they have a protectable interest which warrants intervention as of right, we reject their argument that such an interest exists."

(Footnote omitted.)

In reaching this conclusion, we noted that Hartford "cites only one case [*Lawrence v. Burke*, 6 Ariz.App. 228, 431 P.2d 302 (1967)] in which an insurance carrier was found under similar circumstances to have an interest warranting intervention as of right." *Id.* at 627, 519 A.2d 219. We responded that

"To the extent that *Lawrence* supports the appellants' position, we are not persuaded to follow it. Furthermore, we believe that *Lawrence* is distinguishable from the instant case in that the insurer there, at the time it sought to intervene, changed its position and acknowledged potential liability. *Id.* [431 P.2d] at 307. *Lawrence* also held that the insurer had a duty to defend the insured in the underlying action. *Id.* [431 P.2d] at 309. These factors are not present in this case, where the appellants have been unwavering in their denial of coverage to Spurlin."

Finally, as an alternative basis for finding no protectable interest warranting intervention as of right, we stated, at 628, 519 A.2d 219:

"Even were we able to overlook the inconsistency in the appellants' position, we would be inclined to find their asserted interests insufficient to warrant intervention. The appellants' argument in favor of intervention was predicated on the possible occurrence of two events: an award of damages against Spurlin and an attempt by the appellees to enforce such an award against the appellants. While there may be some substance to the appellants' fears concerning those events, we believe that at

the point intervention was sought those fears were 'merely speculative' and afforded 'no present basis upon which to become a party to the proceedings.'"

(Footnote omitted.)

Our mandate issued on February 9, 1987; neither insurer sought *certiorari* in the Court of Appeals.

In May, 1987, Mr. Birdsong filed a separate declaratory judgment action in the Circuit Court for Baltimore City against Hartford, Liberty Mutual, and Spurlin. In that action, Birdsong claimed that Spurlin's liability is covered by both the Hartford and Liberty Mutual policies and sought a declaration to that effect. In their answers, the two insurers specifically denied such coverage; they continued to maintain that they had no duty to defend Spurlin and no obligation to pay the judgment rendered against him. The declaratory judgment action, we are told, is still pending in the Circuit Court.

In February, 1988, Liberty Mutual filed a "renewed motion" to intervene in the tort case, accompanied by a proposed motion to vacate the "Interlocutory Judgment by Default." The company asserted that the judgment rendered against Spurlin was "interlocutory" under Md.Rule 2–602 because it did not dispose of all claims against all parties. According to the docket entries, the insurer noted, (1) Birdsong's action against one of the three trustees of T.R. Transport, Inc.—Willie Rutherford—had not been adjudicated; and (2) the judgment entered pursuant to the jury's verdict ran only to the plaintiff Victor Birdsong and did not, therefore, encompass the joint consortium claim by Mr. and Mrs. Birdsong.

Building on the assumption that the court retained broad discretionary power over the judgment entered against Spurlin—despite the fact that 22 months had elapsed since it was rendered—Liberty Mutual sought in its proposed motion to vacate to argue that Spurlin had a meritorious defense as to liability and that the damages "should shock the conscience of the court." In the motion to intervene,

Liberty Mutual suggested that our earlier decision was based on the notion that the company's initial motion to intervene was "premature" and that any potential loss to it at that time was speculative. It urged that, with the entry of the $3,000,000 judgment against Spurlin and Spurlin's declaratory judgment action, the motion was no longer premature and the potential loss was no longer speculative.

Nearly three months later—on April 28, 1988—Hartford filed a similar motion, making essentially the same argument as Liberty Mutual. Recognizing the loose ends observed by Liberty Mutual, Birdsong moved to dismiss all claims on behalf of his wife [6] and all claims against the trustees of T.R. Transport, Inc.

The insurers continued to maintain that Spurlin was not covered under their policies and that they therefore had no duty to defend him or to pay any judgment against him. They made clear to the court that they would defend the pending declaratory judgment action on that basis. But, seeing no contradiction whatever in this approach, they just as steadfastly urged that they had an interest in seeing the judgment against Spurlin vacated so that he could assert the defense of a sudden brake failure. Spurlin was not a party to this proceeding; he did not ask for the judgment against him to be vacated. Just who was going to assert this defense on his behalf was not made clear.

After a hearing on the motions, the court, through Judge Greenfeld, decided that, although it did not entirely agree with our earlier decision, it was bound by the decision, and it therefore denied the motions to intervene. To "clean up" the docket, it granted Birdsong's motion to dismiss, thereby making the judgment against Spurlin final.

---

**6.** By the time of the hearing on these motions, Mrs. Birdsong had died, and the court seemed to accept the argument that, as her estate had not been and would not be substituted for her, her interest in the loss of consortium action abated, and that Mr. Birdsong therefore could dismiss that action. We are not concerned with that in this appeal.

We now have this second appeal, by both Liberty Mutual and Hartford, in which they argue that our earlier conclusion that they did not possess a protectable interest in the *Birdsong v. Spurlin* litigation was (1) wrong and (2) "unnecessary" and therefore not binding on Judge Greenfeld.

The claim that our earlier conclusion was wrong and therefore should be discarded is more fully articulated by Liberty Mutual than by Hartford. With a mild dash of chutzpah, it tells us in its brief that

"Unhappily, the court [that's us] adopted its 'inconsistency' thesis in a precedential vacuum. It was unaided by its own researches or by the inadequate briefs of appellate counsel, which cited 'only one case' bearing on the point.... As it turns out, *Lawrence* is the case which exemplifies the mainstream of decisional law. It is *Birdsong I* which proves to be the aberration."

Our disapproval of *Lawrence*, the company tells us, was "ill-advised and premature," and, in a footnote in its brief, it informs us that our "attempted distinction" of that case "is paper thin." Thus, *"Birdsong I* stands alone, apparently indifferent to all recent and respectable authority to the contrary." [7]

The thrust of Liberty Mutual's argument, and, to a large extent, that of Hartford, is that (1) our earlier decision was simply dead wrong, (2) it therefore cannot or should not serve as the "law of the case" but should be reconsidered anew, (3) it is inconsistent with the approach taken later by this Court in *Allstate Ins. Co. v. Atwood,* 71 Md.App. 107,

---

7. We do not ordinarily take offense when lawyers, either as advocates for their clients or as commentators on the law, criticize our decisions. We realize that we do not act with the aegis of divine infallibility; our opinions *should be* subjected to searching examination and constructive critique, and in most instances they are. There is, however, a nicer and more respectful way of making a point than virtually accusing the Court of collective stupidity, much less of indifference, or of not following cases that counsel never cited to it or, as here, that were in some instances decided *after* our earlier decision. We would remind counsel on the brief for Liberty Mutual that one can disagree without being disagreeable.

523 A.2d 1066, *cert. granted* 310 Md. 274, 528 A.2d 1286 (1987), and by other courts that have followed *Lawrence v. Burke*, and (4) whatever prematurity we saw in their initial motions to intervene is no longer extant.

Both insurers see some paramount inconsistency between our earlier decision in this case—*Birdsong I* as they call it—and *Allstate Ins. Co. v. Atwood, supra.* "The clear thrust of *Atwood*," Liberty Mutual urges, "is that an insurer unwavering in its denial of policy coverage may yet intervene as a party to a tort suit and 'be represented at trial so as to protect its interest' ... when the verdict will determine an issue material to coverage." That decision, it tells us, "puts to rest the notion in *Birdsong I* that intervention somehow 'is inconsistent with the appellants' denial of coverage for Spurlin under their liability policies.' "

In *Atwood*, the insured allegedly punched the victim in the face; in a tort action brought against the insured, the victim claimed, alternatively, that the punch was thrown deliberately and negligently. The insurance policy covered acts of negligence but not damage caused intentionally. The insurer, Allstate, defended its insured in the tort case. The jury returned a verdict for the plaintiff, finding specifically that the insured was negligent. Allstate then filed a separate declaratory judgment action, asking the court, in effect, to disregard the jury verdict, declare that the punch was thrown deliberately, and that it was therefore not covered under the policy.

The issue before us in *Atwood*, as we so plainly stated at 110 of 71 Md.App., 523 A.2d 1066, was "whether the insurer who provides a defense for its insured in a tort case may, after disposition of the tort matter, relitigate the same issues and obtain a declaratory judgment that overrides a tort jury's verdict in the tort action." Our answer was "no."

In reaching that conclusion, we observed that an insurer with a possible policy defense is not without a remedy. If the coverage issue is of a type that is not likely to be

litigated in the tort case itself, the insurer may bring a declaratory judgment action prior to trial, independent of the tort case. We also perceived

"nothing in *Brohawn* [*v. Transamerica Insurance Company*, 276 Md. 396, 347 A.2d 842 (1975)] that forbids the carrier, *after supplying independent counsel to its insured or paying the costs of the insured's choice of counsel,* from intervening as a party and being represented at the tort trial. *See Hartford Insurance Company v. Birdsong,* 69 Md.App. 615, 519 A.2d 219 (1987). Costs of the insured's counsel would of necessity include investigative and other charges associated with preparation for trial."

*Atwood,* 71 Md.App. at 113–14, 523 A.2d 1066 (emphasis added).

In the footnote to that statement, we said that "[w]e declined to allow intervention in *Birdsong* because of the untimeliness of the request as well as the insurer's lack of sufficient interest to warrant intervening in the trial of the case." *Id.* at 114 n. 1, 523 A.2d 1066.

It should seem obvious to anyone that, having taken the trouble to cite and expressly distinguish *Birdsong I,* we did not regard *Atwood* as in any way inconsistent with it. Nor is *Atwood* inconsistent with it. There was no question but that Mr. Atwood was an insured under the Allstate policy and that Allstate owed him both a defense and indemnity with respect to the negligence claim. It was in that context that we approved the mechanism of allowing an insurer to intervene as a party in the tort action, provided that it supplied and paid for independent counsel to its insured.

This case is quite different. Not only have the insurers steadfastly and continually maintained that Spurlin is *not* an insured under their respective policies and that they owe him neither a defense nor indemnity, but they have never, even at this juncture, offered to provide him with independent counsel. They remain perfectly well content to let him fend for himself. Their interest, even at this point, is not

necessarily consistent with that of Spurlin. Although they no doubt would be pleased to see a defendant's verdict, their economic interest would be just as well served by— and we have no doubt that they would accept in a minute —a judgment against Spurlin that Spurlin could discharge from his own assets. Their interest, in other words, is not necessarily in exculpating Spurlin but in simply avoiding any liability to themselves.

We have addressed the argument that *Birdsong I* is somehow attenuated by *Atwood* in order to clarify that such is not the case. We need not address any further the correctness of our earlier conclusion that the insurers did not possess a sufficient interest in the case to warrant intervention as of right, for it is clear to us that the "renewed" motions—the ones before us in this proceeding—were untimely as a matter of law and, for that reason, if for no other, had to be denied.

These companies knew since 1983 that the Birdsongs were intending to hold them liable for any judgment that might be rendered against Spurlin. They knew since February, 1985, that Spurlin might have a defense—sudden brake failure—that could exculpate him and Duralite, and possibly Jalousie as well, from liability to the Birdsongs. They knew that, by allowing the Birdsongs to dismiss Jalousie and Duralite, the Birdsongs would face only the unrepresented Spurlin and the defunct and unrepresented T.R. Transport, Inc., that the defense of sudden brake failure, raised by Jalousie, would not be pursued, and that a claim would eventually be made on their policies in any event. They were certainly aware of the precise dilemma of which they now complain on February 18, 1986, when their designated counsel consented to the dismissal of Jalousie and Duralite. Yet, knowing that trial of the nearly three-year-old action was scheduled for March 31, 1986, Hartford waited until March 7—more than two weeks—to seek intervention; Liberty Mutual sat on its corporate hands for over a month; its motion wasn't filed until March 19, 1986.

Even if some lame excuse might be found for such lack of acuity and diligence at that stage, no excuse can be found for the continuation of it thereafter. They admittedly neglected to bring to our attention in the first appeal cases that they now insist are crucial. They then waited a full year after the issuance of our mandate in *Birdsong I,* and nearly 10 months after issuance of our Opinion in *Atwood*—the case they claim is dispositive—to seek their "renewed" intervention. As we indicated, the judgment against Spurlin, even if interlocutory under Md.Rule 2–602 because of Birdsong's failure to "clean up" the two loose ends, was based on a jury verdict that was 22 months old. Though continuing to insist, on the one hand, that Spurlin was not liable, the insurers persisted in their position that they owed him no defense and intended to give him none. Under all of these circumstances, we have no hesitation in concluding, as a matter of law, that their "renewed" motions were untimely and were therefore properly, and necessarily, rejected.

ORDER DENYING MOTIONS TO INTERVENE AFFIRMED; APPELLANTS TO PAY THE COSTS.