584 A.2d 714

**PHARMACEIA ENI DIAGNOSTICS, INC.**

v.

**WASHINGTON SUBURBAN SANITARY COMMISSION.**

**No. 801, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 23, 1991.

Alan B. Sternstein (David D. Freishtat, Larry N. Gandal, James M. Kefauver and Shulman, Rogers, Gandal, Pordy & Ecker, P.A., on the brief), Rockville, for appellant.

Richard J. Magid (Carol A. Zuckerman and Whiteford, Taylor & Preston, on the brief), Baltimore, (Of Counsel: Nathan J. Greenbaum, General Counsel and Robert H. Drummer, Associate General Counsel for WSSC), Hyattsville, for appellee.

**558**

Argued before ALPERT, BLOOM and JAMES S. GETTY (Retired), Specially Assigned, JJ.

BLOOM, Judge.

The ten-year-old dispute involved in this appeal has previously been before this Court, the Court of Appeals (twice), two circuit courts of this State, and one federal court.

The litigation began when appellee, Washington Suburban Sanitary Commission, instituted in the Circuit Court for Montgomery County a declaratory judgment action against several property owners, including appellant, Pharmaceia ENI Diagnostics, Inc. Instead of filing a counterclaim, appellant chose to pursue separate actions against appellee, which thereafter filed a dismissal of appellant from the declaratory judgment action. Unable to obtain relief in its separate actions, appellant attempted to file a counterclaim in the declaratory judgment action. Upon motion by appellee, the Circuit Court for Montgomery County (Weinstein, J.) struck appellant's counterclaim on the ground that appellant was no longer a party to the action. Appellant thereupon filed a motion to intervene, which was denied. It is from those rulings that this appeal was taken.

Perceiving no reversible error, we shall affirm.

*Facts*

Appellant operates a biological laboratory for the performance of medical testing and the manufacturing of medical products. The laboratory is situated on Lot No. 6 of the Montgomery Industrial Park in Montgomery County, Maryland. Lot No. 6 is adjacent to a tract of land known as "Site 2" and, along with other lots in Montgomery Industrial Park, is benefited by restrictive covenants prohibiting the accumulation of waste material or refuse on, and the emission of objectionable odors from, Site 2. In July, 1980, appellee acquired Site 2 in condemnation proceedings; in November of that year it instituted its declaratory judgment action (hereinafter referred to as the *Frankel* case) seeking a declaration that the covenants on Site 2 were not

property interests for which it had to compensate the beneficiaries of the covenants. All of the property owners benefiting by the covenants, including appellant, were named as defendants. Most of the defendants filed counterclaims; appellant did not.

In December, 1982, the Circuit Court for Montgomery County (Mitchell, J.) held that the restrictive covenants were compensable property interests. We affirmed that ruling in *Washington Suburban Sanitary Commission v. Frankel,* 57 Md.App. 419, 470 A.2d 813 (1984). One year later, however, the Court of Appeals vacated that holding for want of final judgment and remanded the case for litigation of damages and adjudication of the counterclaims. *Washington Suburban Sanitary Commission v. Frankel,* 302 Md. 301, 487 A.2d 651 (1985). Appellant had filed an answer to the complaint in the *Frankel* case on 3 March 1981, but thereafter did not participate in that case. Instead, it filed a separate action against appellee in the United States District Court for the District of Maryland on 2 April 1986. The District Court dismissed appellant's complaint for failure to state a claim upon which relief could be granted.

Seeking compensation for the taking of its property, but opting not to do so by filing a counterclaim in the *Frankel* case, appellant filed a separate "inverse condemnation" action (*Electro–Nucleonics v. Washington Suburban Sanitary Commission*) in March, 1986. On 27 June 1987, appellee filed an amended complaint in the *Frankel* case, which appellant did not answer, and in December of that year appellee filed a notice dismissing appellant from that case. Appellant did not object to the dismissal, nor did it assert any right to remain in the case.

In the *Electro–Nucleonics* action, the Circuit Court for Montgomery County (Cave, J.) granted summary judgment to appellee, finding that the suit was filed more than three years after appellee acquired title to Site 2 and was thus barred by limitations. That judgment was appealed, but prior to our review of the decision, the Court of Appeals

granted *certiorari,* and on 13 March 1989, it affirmed the granting of summary judgment. *Electro–Nucleonics v. Washington Suburban Sanitary Commission,* 315 Md. 361, 554 A.2d 804 (1989). Of particular significance to the case *sub judice,* the Court of Appeals noted that, during oral argument, appellant's counsel admitted that appellant had been dismissed, without prejudice, from the *Frankel* case. 315 Md. at 365, 554 A.2d 804. The United States Supreme Court denied *certiorari* in *Electro–Nucleonics* on 2 October 1989. —— U.S. ——, 110 S.Ct. 158, 107 L.Ed.2d 115 (1989).

Having failed to obtain relief in two separate actions, appellant, on 20 September 1989, sought to reactivate its status as a party to the *Frankel* case by filing therein a counterclaim against appellee. The trial court granted appellee's motion to strike the counterclaim on 7 March 1990, ruling that appellant had been dismissed from the suit and was thus barred from filing a counterclaim. Promptly thereafter, on 23 March 1990, appellant filed a motion to intervene in the declaratory judgment case. Appellant claimed that it had a right to intervene; in the alternative, it sought permission to intervene. The circuit court, however, denied the motion, without explanation, on 19 April 1990.

In this appeal, appellant contends that it was never properly dismissed from the *Frankel* case, notwithstanding its admission to the Court of Appeals to the contrary, because it had filed an answer to the original complaint on 3 March 1981, well in advance of the December 1987 Notice of Dismissal, and never stipulated to the dismissal. Therefore, appellant argues, it was not dismissed in accordance with Md. Rule 2–506(a). Further, appellant contends that since appellee failed to file a motion for voluntary dismissal before appellant's counterclaim was filed, there was no dismissal in accordance with Md. Rule 2–506(b). Alternatively, appellant argues that even if it had been properly dismissed, the trial court erred in denying its motion to intervene.

I

Md. Rule 2–331(a) provides, in pertinent part, that "[a] party may assert as a counterclaim any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." An obvious predicate to the proper filing of a counterclaim, therefore, is that the counterclaimant be a party to the action. The trial court based its decision to strike appellant's counterclaim on its determination that appellant had consented to appellee's Notice of Dismissal and was, consequently, no longer a party to the declaratory judgment case. From the Order and Opinion of 7 March 1990, it is apparent that the trial court inferred appellant's consent to the dismissal from its decision to commence a separate suit against appellee, its failure to object to the notice of dismissal, its lack of participation in the *Frankel* case after receiving the notice, and its admission to the Court of Appeals in *Electro–Nucleonics* that it had been dismissed from the *Frankel* case. The trial court further considered the prejudice to appellee of requiring it to relitigate the issues presented in the counterclaim after having defended itself in two prior cases instituted by appellant and involving the same issues.

■ Md. Rule 2–331(d) provides:

If a party files a counterclaim or cross-claim more than 30 days after the time for filing that party's answer, any other party may object to the late filing by a motion to strike filed within 15 days of service of the counterclaim or cross-claim.... The court shall grant the motion to strike *unless there is a showing that the delay does not prejudice other parties to the action.* (Emphasis added.)

Appellant failed to file a counterclaim for more than eight years after the filing of its answer. Consequently, even if appellant were still a party to the *Frankel* case when it filed the counterclaim, the court would have been entirely justified in striking out the counterclaim in the absence of any showing that allowing the pleading would not prejudice

other parties. Appellant clearly failed to make such a showing, and the trial court noted in its opinion and order striking the counterclaim that, "[a]fter putting [appellee] to the time and expense of defending itself in those [prior] suits, it would be unfair to permit [appellant] to relitigate the issues in the form of this counterclaim." If the allowance of the counterclaim were a matter of discretion (*i.e.*, if appellant were still a party), the scope of our review of the decision to grant or deny a counterclaim would be limited to determining whether the court abused its discretion. *Faulkner v. Town of Chestertown*, 290 Md. 214, 220, 428 A.2d 879 (1981); *Kramer v. Emche*, 64 Md.App. 27, 43, 494 A.2d 225, *cert. denied*, 304 Md. 297, 498 A.2d 1184 (1985). In view of appellant's acquiescence to the Notice of Dismissal, as well as the other evidence before the trial court, the prejudice to appellee arising out of the late filing of the counterclaim would justify the striking of appellant's counterclaim.

The primary basis for the court's ruling, however, was its determination that appellant had been dismissed from the case. Appellant argues that the Notice of Dismissal was ineffective because it had filed its answer to the complaint many years before the Notice was filed. Md. Rule 2–506 provides:

(a) Except as otherwise provided in these rules or by statute, a plaintiff may dismiss an action without leave of court (1) by filing a notice of dismissal at any time before the adverse party files an answer or a motion for summary judgment or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

(b) Except as provided in section (a) of this Rule, a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

Although no stipulation or order of dismissal was filed, appellant's conduct subsequent to receiving the Notice of Dismissal justifies the trial court's inference of consent.

■ Appellee is clearly wrong in arguing that since the Notice of Dismissal was filed after its amended complaint was filed and before any parties responded to the amended complaint, the notice effected a voluntary dismissal in accordance with Rule 2–506(a). Appellee relies on *Keesling v. State*, 295 Md. 722, 727–28, 458 A.2d 435 (1983); *Conklin v. Schillinger*, 255 Md. 50, 257 A.2d 187 (1969); and *Shapiro v. Sherwood*, 254 Md. 235, 238–39, 254 A.2d 357 (1969), in arguing that once an amended complaint is accepted by the trial court it supersedes the original complaint and becomes the operative pleading in the case as to all defendants. Although this is a correct statement of law, appellee misapplies this rule in contending that an amended complaint can resurrect a plaintiff's right unilaterally to dismiss an action until the defendant responds to the amended complaint. This would defeat the purpose of the limitation on unilateral dismissals in Rule 2–506(a) in that any time a plaintiff wanted to dismiss an action after the defendant had filed an answer he could simply file an amended complaint and a Notice of Dismissal. Moreover, appellee's argument fails to address Md. Rule 2–341(a), which provides that "if no new or additional answer [to the amended complaint] is filed within the time allowed, the answer previously filed shall be treated as the answer to the amendment." Accordingly, we reject appellee's assertion that the Notice of Dismissal was sufficient, by itself, to dismiss appellant from the *Frankel* case.

■ Nevertheless, appellant failed to object to the Notice of Dismissal or assert its right to remain in the *Frankel* case. Indeed, appellant did not participate in *Frankel* in any capacity after receiving the Notice but chose to pursue its own action against appellee, in which it admitted to the Court of Appeals that it had been dismissed from *Frankel.* Appellant effectively admitted its error in not objecting to the Notice of Dismissal when arguing before the trial court

that its counterclaim should be allowed. Counsel for appellant observed, "We are really arguing whether we should be dismissed or not, which is probably what should have been argued two years ago when they filed their motion to dismiss...." Appellant argued to the trial court that it never believed that it had been dismissed from the *Frankel* case, but failed to offer any explanation for its acquiescence. Moreover, when the trial court asked appellant's counsel whether the Court of Appeals was aware at the time of argument in *Electro–Nucleonics* that appellant had been dismissed from the *Frankel* case, he responded, "I had stated that, Your Honor, yes." Appellant argues that it was mistaken in its admission to the Court of Appeals; however, appellant had a significant period of time prior to its admission in the Court of Appeals during which to evaluate the Notice and articulate any objection.

The trial court found that appellant's conduct demonstrated its consent to the dismissal. The court stated:

This Court finds that ENI is barred from filing a counterclaim in this case because it is no longer a party to the suit. WSSC dismissed ENI from this case before ENI filed the counterclaim. It is clear by ENI's actions that it consented to the dismissal. First, ENI chose to pursue two separate actions against WSSC. And secondly, ENI admitted to the Court of Appeals that it was dismissed from this case.

Furthermore, ENI made the voluntary decision to pursue its own case. After putting WSSC to the time and expense of defending itself in those suits, it would be unfair to permit the defendant to relitigate the issues in the form of this counterclaim.

We cannot hold that this conclusion is clearly erroneous, especially in view of appellant's admission to the Court of Appeals and that Court's reliance on that admission.[1]

---

**1.** In *Electro–Nucleonics v. Washington Suburban Sanitary Commission,* 315 Md. 361, 365, 554 A.2d 804, *cert. denied,* —— U.S. ——, 110 S.Ct. 158, 107 L.Ed.2d 115 (1989), the Court of Appeals noted that ENI

Although there was neither a formal Order of Dismissal nor a signed stipulation of dismissal filed, such papers are, under the circumstances of this case, unnecessary in light of appellant's conduct demonstrating its consent to the dismissal. In *Oroian v. Allstate Ins. Co.*, 62 Md.App. 654, 668, 490 A.2d 1321 (1985), we held that the failure of Allstate to include its separate declaratory judgment claim in its trial memorandum and oral argument "... was tantamount to a motion for voluntary dismissal." We further held that the trial court's order *"effectively* granted that motion ...*, thereby satisfying the requirement that voluntary dismissal ... be accomplished by order of court absent a stipulation of dismissal signed by all parties." *Id.* (emphasis added). The case *sub judice* presents a similar situation in which appellant's consent to the dismissal may be inferred from its actions or, at least, appellant may be estopped from contending that it objected to being dismissed. *See Hartford Ins. Co. v. Birdsong*, 78 Md.App. 343, 348 n. 4, 553 A.2d 251 (1989). We hold, therefore, that appellant was no longer a party to the *Frankel* case when it filed its counterclaim and that the trial court did not err in striking the counterclaim on that basis.

## II

■ Shortly after the trial court struck the counterclaim, appellant filed a motion to intervene as of right and with permission, pursuant to Md. Rule 2–214. Appellant argues that the trial court's denial of this motion constituted re-

---

[appellant] had opted to file a separate action rather than join the other defendants and file a counterclaim and that ENI had been dismissed from *Frankel.* Consequently, the Court stated:

Thus, we are not presented with a case involving '[t]he rule precluding a declaratory judgment to resolve an issue when there is pending another action in which the same issue can properly be resolved [—a rule which] is neither jurisdictional nor absolute.' *Haynie v. Gold Bond Bldg. Prods.*, 306 Md. 644, 652, 511 A.2d 40, 44 (1986). More generally *see Dugan v. Howard,* 130 Md. 114, 116–17, 99 A. 966, 967 (1917).

315 Md. at 365 n. 1, 554 A.2d 804.

versible error. We disagree. In support of its contention that it had a right to intervene, appellant refers to the holding of the Court of Appeals in *Frankel, supra,* 302 Md. 301, 309, 487 A.2d 651 (1989), that the declaratory judgment was not a final ruling until the counterclaims were litigated. Appellant also relies on the Court's statement in *Electro-Nucleonics, supra,* 315 Md. 361, 375 n. 4, 554 A.2d 804 (1989), that

> The counterclaimants in *Frankel* could have awaited the final declaratory decree and, if it were adverse to WSSC, could have then sought just compensation in the declaratory judgment action or commenced separate actions for relief based on that judgment.

These statements, appellant argues, establish its right as a property owner benefited by the restrictive covenants on Site 2 to intervene in the *Frankel* case. We believe, however, that the Court of Appeals was simply outlining the options available to the defendants in the *Frankel* case of either filing a counterclaim or instituting a separate action for relief. Appellant chose the latter option and, as we have discussed *supra,* was subsequently dismissed from the declaratory judgment action. The failure to obtain relief in a separate suit does not bestow upon appellant the right to try again by intervening in the same case from which it was previously dismissed.

▮ In *Hartford Ins. Co. v. Birdsong,* 69 Md.App. 615, 519 A.2d 219 (1987), *aff'd on reconsideration,* 78 Md.App. 343, 553 A.2d 251 (1989), we adopted the four part test devised by the federal appellate courts for determining whether intervention as a matter of right is justified in a particular case. We listed the four requirements as:

> (1) the application for intervention must be timely;
> (2) the applicant must have an interest in the subject matter of the action;
> (3) disposition of the action would at least potentially impair the applicant's ability to protect its interest; and
> (4) the applicant's interest must be inadequately represented by existing parties.

69 Md.App. at 622, 519 A.2d 219; *see also Stewart v. Tuli,* 82 Md.App. 726, 730, 573 A.2d 109 (1990). We noted in *Birdsong, supra,* that "[f]ailure to satisfy any one of the four requirements is sufficient to warrant denial of a motion to intervene as of right." 69 Md.App. at 622, 519 A.2d 219. The first requirement, timeliness, is of paramount importance, regardless of whether intervention is sought as of right or by permission.

The Court of Appeals, in *Maryland Radiological Society, Inc. v. Health Services Cost Review Commission,* 285 Md. 383, 388, 402 A.2d 907 (1979), stated:

> Whether intervention be asked of right or permissibly, it is manifest from the inaugural words of both sections a and b of Rule 208 [now Rule 2–214] that timely application is a prerequisite to such a request being granted. Thus before proceeding to consider the substantive merits of an intervention motion, a trial court should require that the applicant demonstrate the promptness of his request. Whether it is shown is dependent upon the individual circumstances of each case and rests in the sound discretion of the trial court, which, unless abused, will not be disturbed on appellate review.[2]

*See also Sornberger v. Chesapeake & Ohio Railway Co.,* 81 Md.App. 14, 23–24, 566 A.2d 503 (1989). Although the trial court did not state in its order the basis for its refusal to allow appellant to intervene in the *Frankel* case, in light of the court's statements during the hearing on appellee's motion to strike appellant's counterclaim, which occurred shortly before appellant filed its motion to intervene, and its findings expressed in the opinion and order striking the counterclaim, timeliness was undoubtedly a principal consideration.

---

**2.** This "abuse of discretion" standard for appellate review of a trial court's denial of a motion to intervene was adopted by the Court of Appeals in *Montgomery County v. Ian Corp.,* 282 Md. 459, 465, 385 A.2d 80 (1978).

Appellant relies on the fact that the trial court did not explicitly state that the motion to intervene was filed untimely in arguing that the motion was timely filed. We noted, however, in *Ellerin v. Fairfax Savings Association*, 78 Md.App. 92, 103–04, 552 A.2d 918, *cert. denied*, 316 Md. 210, 557 A.2d 1336 (1989), that

[T]he question of timeliness depends on the individual circumstances of each case; it is a determination which rests within the sound discretion of the trial court. It is not essential that the record reflect the extent, if any, on which the trial court based its decision on timeliness. (Citation omitted.)

Therefore, the fact that the trial court did not state its reasons for denying appellant's motion to intervene does not imply that the court considered the motion timely, as appellant suggests.

In determining whether a motion to intervene has been timely filed, a court must consider the purpose for which intervention is sought, the probability of prejudice to the parties already in the case, the extent to which the proceedings have progressed when the movant applies to intervene, and the reason or reasons for the delay in seeking intervention. *Maryland Radiological Society, supra*, 285 Md. at 389, 402 A.2d 907. Of these four factors, the most damaging to appellant's claim of timeliness is the fourth factor—the reason for the delay. Appellant asserts that prior to the trial court's decision to strike the counterclaim, it believed it was still a party to the *Frankel* case, thus rendering a motion to intervene unnecessary. Here again, however, the reasonableness of appellant's belief must be assessed in light of its failure to object to the Notice of Dismissal and its admission to the Court of Appeals that it was no longer a party to the *Frankel* case. Furthermore, the record reflects that the trial court had just considered these factors, in addition to appellant's inactivity in the *Frankel* case and the prejudice to appellee of relitigating the issues presented by the counterclaim, in striking appellant's counterclaim. It is inconceivable that

the court ignored those same considerations in denying appellant's motion to intervene.

Considering the merits of the motion to intervene, as if it had been timely filed, we would find no abuse of discretion in denying it. The rejected counterclaim consisted of four counts. The first count, which sought compensation for inverse condemnation, was held by the Court of Appeals to be barred by limitations. *Electro–Nucleonics, supra,* 315 Md. at 376–77, 554 A.2d 804. The second count, which sought compensation for violation of the covenants, was also rejected by the Court of Appeals. *Id.* at 381, 554 A.2d 804. The fourth count alleged bad faith on the part of appellee and is similar to counts filed by several counterclaimants in the *Frankel* case, all of which were dismissed by the trial court. The remaining count sought compensation for the "nuisance" created by appellee's use of Site 2 for a sewage sludge compost management complex. Appellant alleged that the unhealthy emissions from the complex, "threaten to force cessation of ENI's activities on the property."

Appellee correctly notes, however, that appellant's nuisance claim is inherently different from those of the counterclaimants in that appellant alleges that it may be prevented from continuing any operation on its property. All of the other covenant beneficiaries, counterclaiming in the *Frankel* case, merely alleged that the nuisance decreases the value of their properties. Allowing appellant to intervene in *Frankel* would probably result in considerable further discovery and delay merely to give appellant an opportunity to present a counterclaim that it had previously chosen to forego when it initiated a separate action.

Since we perceive no error or abuse of discretion either in the striking of appellant's counterclaim or denial of its motion to intervene, we shall affirm the judgment of the circuit court.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.